UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IMX, INC., d/b/a GLOBAL NETOPTEX, INC., | |
| Plaintiff, | CASE NO.  09-20965-CIV-JEM |
| vs. | |
| | **JURY TRIAL DEMANDED** |
| E-LOAN, INC. and BANCO POPULAR NORTH AMERICA, INC., | |
| Defendant. | |

**IMX, INC.'S OPPOSITION TO E-LOAN, INC. AND
BANCO POPULAR NORTH AMERICA, INC.'S MOTION
TO DISMISS WITH PREJUDICE, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT OR FOR MORE DEFINITE STATEMENT**

## I.    INTRODUCTION

Defendants' scattershot motion invites this Court to skip claim construction, skip the discovery phase, and enter judgment based on their distorted reading of the asserted patent.  This motion procedurally is premature and substantively is devoid of merit.  Indeed, with respect to the motion to dismiss, IMX has filed contemporaneously with this opposition an Amended Complaint that thus makes the motion to dismiss moot.  This Court should deny the motion in its entirety on either or both grounds.

First, Defendants argue that the Complaint lacks enough specificity because it fails to specifically identify the accused products and methods or Defendants' infringing acts.  Regardless of whether the argument was well-taken to begin with, Defendants' technical objection is now moot.  On June 24, 2009, IMX specifically identified the accused products and methods in its discovery requests to Defendants.  And. IMX's Amended Complaint specifically identifies the accused products and methods and infringing acts.  Defendants, therefore, cannot

complain that they lack sufficient notice of the claims against them.

Second, Defendants argue that judgment should be entered in their favor because IMX has not alleged joint infringement. This argument is premature because it depends on the claim construction that Defendants implicitly advance, and claim construction has yet to occur. Even if Defendants' claim construction ultimately were adopted, IMX is not required to plead a specific theory of vicarious liability but instead is entitled to discovery on Defendants' non-infringement theory.

But, even setting all this aside, Defendants' argument can be rejected on the merits because it flatly misreads the patent's claims. The plain language of the claims shows that they *can be* infringed by a single actor. The specification reinforces this conclusion. As a result, this will be a straightforward case of direct and indirect infringement by Defendants. Defendants' invitation to redraft the claims of an issued patent should be rejected.

Third, Defendants also argue that the patent is invalid under the Federal Circuit's recent decision in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (*en banc*), which is currently under review by the Supreme Court. This argument also is premature because it jumps the gun on claim construction. But, this argument likewise can be rejected on the merits because no plausible reading of the claims can support it. To begin with, *Bilski* concerns only process claims and does not even reach the system claims asserted here. Further, as explained in the background and argument sections below, both the method and system claims of the asserted patent are tied to a particular machine within the meaning of *Bilski*. All asserted claims easily pass the bar for patent-eligible subject matter under *Bilski*. This conclusion will remain the same regardless of whether the Supreme Court endorses the Federal Circuit's test or restores the bar to a lower level. Accordingly, Defendants' stay request likewise is without merit.

2

Defendants' motion should be denied in its entirety, and the case should proceed according to the schedule that the Court has established.

## II.    RELEVANT FACTS

### A.    Procedural History

On April 13, 2009, IMX, Inc. ("IMX") filed this patent infringement action against E-Loan, Inc. ("E-Loan") and Banco Popular North America, Inc. ("Banco Popular") (collectively, "Defendants"). Dkt. No. 1. In the Joint Scheduling Report, Defendants indicated their desire for a separate hearing on the validity of U.S. Patent No. 5,995,947 (the "'947 patent") in light of the Federal Circuit's *Bilski* decision, which currently is before the Supreme Court. Dkt. No. 12.

On June 18, 2009, the Court issued its Order regarding trial date and pretrial schedule for this case. Dkt No. 15. Correctly rejecting Defendants' efforts to address the validity issue prematurely, the Court adopted a typical case schedule, including an expert report exchange deadline of August 31, 2009, and a discovery deadline of December 17, 2009. *Id.* The Court further ordered that a *Markman* hearing would take place on November 10, 2009. *Id.*

On June 25, 2009, IMX served interrogatories and requests for production on Defendants. These discovery requests specifically identify Defendants' accused products and methods as:

> "Accused Product(s)" shall mean the combination of hardware and software, including but not limited to E-Track, used by E-Loan to receive and process loan request information over a communications network, such as, but not limited to, the Internet.
>
> "Accused Method(s)" shall mean the process by which E-Loan receives and processes loan request information over a communications network, such as, but not limited to, the Internet.
>
> "Accused Product(s)" shall mean the combination of hardware and software used by Banco Popular to receive and process loan request information over a communications network, such as, but not limited to, the Internet.

3

> "Accused Method(s)" shall mean the process by which Banco
> Popular receives and processes loan request information over a
> communications network, such as, but not limited to, the Internet.

*See* Dkt. No. 19, Ex. 1. Defendants' responses were initially due on July 27, 2009.

On June 26, 2009, Defendants filed the present motion with the Court. Dkt No. 16. On July 8, 2009, Defendants filed an emergency motion to stay all discovery pending resolution of the motion. Dkt No. 19. On July 9, 2009, IMX served Defendants with a second set of interrogatories and requests for production. Later that day, citing a lack of "good cause," the Court denied Defendants' emergency motion to stay discovery. Dkt No. 21. Despite this denial, Defendants filed *another* emergency motion to stay discovery the very next day, which appeared to be nearly identical to the one this Court already denied. Dkt No. 24. That motion was likewise denied with respect to the request for a stay, but granted in part as to Defendants' request for additional time to respond to IMX's discovery. Defendants' responses are now due on August 17, 2009. Dkt No. 25.

**B.    The '947 Patent**

IMX is the owner of the '947 patent, entitled "Interactive Mortgage and Loan Information and Real-Time Trading System." The application for the '947 patent was filed with the United States Patent and Trademark Office ("USPTO") on September 12, 1997. Dkt. No. 1, Ex. A, '947 Patent. The USPTO issued the '947 patent to IMX on November 30, 1999. *Id.*

The '947 patent is a pioneering patent in the loan industry. In the past, nearly all of the information relating to a loan transaction was collected by hand, transmitted using paper applications, reviewed and compared by human beings, and ultimately disseminated using paper "rate sheets" or similar advertising materials. *Id.* at 1:22-28.

For example, a broker trying to obtain a loan for a borrower might need to interview the

4

client, consult rate sheets from multiple lenders to determine which lending programs might be appropriate for the client, submit multiple applications (possibly on several different forms) to selected lenders, and await action on those applications before being able to advise the borrower. *Id.* at 1:28-35. By the same token, a lender trying to set lending rates was required to examine the present interest rate market, determine the mix of qualified borrowers likely to apply, determine a set of lending programs and lending rates best suited to the market and the risk the lender was willing to bear, and periodically post rate-sheets or similar advertising material to multiple brokers informing them of those lending programs and lending rates. *Id.* at 1:35-43.

These operations typically were performed by hand, resulting in the high cost of initiating and processing loan transactions. *Id.* at 1:47-48. For borrowers, it was difficult to compare more than a relatively few lending programs. *Id.* at 1:58-60. For lenders, it was difficult to select anything but a relatively simple set of lending categories. *Id.* at 1:60-62. To address this problem in the art, the '947 patent created a manageable and cost-efficient method and system for processing loan applications over the Internet using a client-server architecture. *Id.* at 3:10-15; 9:12-23; Fig. 1. According to the invention, a transaction server is programmed to manage and respond in real-time to requests issued by parties to the loan transaction. *Id.* at 3:18-35; 4:51-6:3. A relational database is used to store loan profiles and maintain relevant status information during the pendency of the loan transaction.[1] *Id.* at 3:37-52.

Figure 1 of the '947 patent depicts a block diagram of the interactive mortgage and loan information and real-time trading system. *Id.* at 2:58-59; 3:18-35.

---

[1] Though Defendants correctly note at page 2 of their memorandum that the preferred embodiment of the disclosed invention also includes a mechanism for enabling multiple lenders to bid on a particular loan application (or loan profile), the independent claims do not require this additional mechanism. Contrary to Defendants' contention, the independent claims do not overstate the invention; rather, they plainly recite the broad scope to which pioneering inventions such as the '947 patent are entitled.

5



FIG. 1

The two independent claims—claims 1 and 19—capture the essence of this pioneering invention. Claim 1 is a method claim. It reads:

> A method for processing loan applications, said method including the steps of maintaining a database of pending loan applications and their statuses at a database server, wherein each party to a loan can search and modify that database consistent with their role in the transaction by requests to said server from a client device identified with their role.

*Id.* at col. 14, ln. 66 – col. 15, ln. 5. Claim 19 of the '947 patent is an apparatus claim and reads:

> A system for processing loan applications, said system including
> a database of pending loan applications, said database including status information regarding said pending loan applications;
> a transaction server, said transaction server being responsive in real time to requests from parties to said pending loan applications, said requests including requests for searching and requests for modifying said database consistent with roles for said parties.

*Id.* at col. 15, ln. 59 – col. 16, ln. 2.

6

## III.    ARGUMENT

### A.    IMX Has Stated A Claim for Patent Infringement by Defendants.

#### 1.    IMX has Pled the Basic Elements of an Infringement Claim.

In ruling on a motion to dismiss for failure to state a claim, the allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *Davis v. Monroe County Bd. of Educ.*, 120 F.3d 1390, 1393 (11 Cir. 1997). "The threshold for surviving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is 'exceedingly low.'" *Brown v. U.S. Dep't of Commerce*, 2008 WL 4933644, at *2 (M.D. Fla. Nov. 18, 2008) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). "[A] plaintiff must plead only enough facts to state a claim to relief that is 'plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

The Federal Circuit recently observed that, even under *Twombly*, a patentee need only "plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). To this end, the Federal Circuit explained that a complaint for patent infringement should contain "1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that defendant has been infringing the patent 'by making, selling and using [the device] embodying the patent'; 4) a statement that the plaintiff has given the defendant notice of infringement; and 5) demand for an injunction and damages." *Id.* (quoting Fed. R. Civ. P. Form 16 (2006)). The Complaint and the Amended Complaint allege all these elements.

#### 2.    Defendants' Motion Is Moot to the Extent It Is Based on Objections to the Specificity of the Complaint.

Even if Defendants were correct that IMX's original Complaint did not provide sufficient notice of Defendants' infringing acts, Defendants have no reason to object now. On June 24,

2009, IMX served Defendants with discovery requests that specifically identified Defendants' accused products and services. Moreover, in the interest of efficiency and to minimize unnecessary motion practice, IMX contemporaneously has filed and served an Amended Complaint that specifically identifies Defendants' accused products and services and infringing acts. Defendants' motion to dismiss the complaint as insufficiently specific and their alternative motion for a more definite statement are, therefore, moot. *See, e.g., Ali v. Prestige Window & Door Installation, LLC*, 2009 WL 927947 (S.D. Fla. 2009) ("The amended complaint makes the original complaint and its corresponding motions [to dismiss] moot").

> **3.    Defendants' "Joint Infringement" Argument Is Premature and Based on an Incorrect Reading of the Claims**
>
> > **a.    Defendants' "Joint Infringement" Argument Is Premature Because It Requires Claim Construction.**

Infringement analysis is a two-step process. A court must first construe the claims and then compare the accused product to the claims as construed. *Abbot Labs. v. Sandoz*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). To determine the meaning of patent claims, the Court initially considers three sources of intrinsic evidence: the claims themselves, the patent specification, and the file history. *Philips v. AWH Corp.*, 415 F.3d 1303, 1317-18 (Fed. Cir. 2005) (*en banc*). In its discretion, the Court also may receive extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises," if it is helpful to understand the patent or if needed to resolve an ambiguity in the intrinsic evidence. *Id.* In light of all this, courts routinely have declined to address claim construction matters at the pleading stage. *See, e.g., Technology Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 919 (D. Md. 2008) ("As suggested by the law governing claim construction analysis, the necessary inquiries are of the kind not appropriate for the motion to dismiss stage."); *Schreiber v. Eli Lilly & Co.*, 2006 WL 782441, at

*4 (E.D. Pa. March 27, 2006) ("The proper time for this court to address claim construction is not in a motion to dismiss."); *Cima Labs, Inc. v. Actavis Group HF*, 2007 WL 1672229, at *3 (D.N.J. June 7, 2007) (relying on *Schreiber* in denying a motion to dismiss).

Moreover, this Court already has established a schedule for litigating and resolving claim construction in a timely and orderly fashion. Whether their motion is construed as one on the pleadings or a summary judgment motion, Defendants should not be permitted to preempt this process. Rather, the parties should be given an opportunity to develop a record and submit briefing on claim construction, and this Court should have an opportunity to consider the parties' submissions and arguments as part of the *Markman* process.

Defendants' reliance on *Global Patent Holdings, LLC v. Panthers BRHC, LLC*, 586 F. Supp. 2d 1331, 1333-34 (S.D. Fla. 2008), is misplaced. Critical to the court's decision in *Global* was the plaintiff's concession that infringement actually required multiple parties to perform different steps of the patented method. *Id.* at 1335 ("Plaintiff conceded that the patented method does not begin until a computer user visits Defendant's website.... The initial step of the '341 patent calls for action on the part of the remote computer user.") Resolution of the motion to dismiss thus did not require any claim construction.[2]

Here, of course, there is no such concession, and Defendants' argument raises disputed claim construction issues. These issues should be decided according to the schedule that the Court already has established. And, as shown below, Defendants' argument ultimately lacks any merit because the claims of the '947 patent on their face can be infringed by a single actor.

---

[2] Further, several courts have declined to follow *Global* and instead refused to dismiss a colorable direct infringement claim either at summary judgment or at the pleading stage. *See e.g., American Patent Dev. Corp., LLC v. Movielink, LLC*, 2009 WL 1904341 at *11-12 (D. Del. 2009) (declining to follow *Global* as grounds for granting summary judgment of no infringement; summary judgment granted on other grounds); *see also Charles E. Hill & Assocs., Inc. v. Abercrombie & Fitch Co.*, 2-07-cv-00234 (E.D. Tex. July 2, 2009, Order) (attached hereto as Exhibit

9

Thus, while Defendants' argument should be rejected as premature, it is also destined to fail.

**b.    Defendants' "Joint Infringement" Argument Lacks Merit Because It Is Based on an Incorrect Reading of the Claims.**

Even if the Court were inclined to address the substance of Defendants' arguments now, their motion should be denied because it depends on an outright misreading of the claims. Defendants contend that both claims 1 and 19 expressly require acts by multiple parties (*i.e.*, borrowers and lenders) for a direct infringement. Defendants' Brief at 11-13. According to Defendants, the language "each party to a loan" and "parties to said pending loan applications" in claims 1 and 19, respectively, support this conclusion. Defendants' Brief at 11. But, the claims do not require these parties to perform any step of the claimed methods. Nor, do they require multiple parties to use different elements of the claimed system. Defendants' effort to divorce these phrases in the claim language from their grammatical context should be rebuffed. *See Phillips*, 415 F.3d at 1316 (a "term can be defined only in a way that comports with the instrument as a whole"); *Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1333 (Fed. Cir. 2005) ("[T]he district court's claim construction stayed true to the claim language as it is used in the context of the claim itself."). The plain language of the claims—read in their entirety—confirms that the phrases highlighted by Defendants recite necessary <u>capabilities</u> of the database server (claim 1) and transaction server (claim 19), and do not require affirmative acts by multiple parties for infringement.

As the plain language of the claim shows, the claimed feature of the database server in claim 1 is that it "can" be searched and modified by parties to a loan transaction. Dkt. No. 1, Ex. A, '947 Patent at 14:66-15:5. Similarly, the claimed feature of the transaction server in claim 19

---

A) (declining to follow *Global* and denying a motion dismiss a patent infringement complaint at the pleadings stage).

is that it is "responsive" in real-time to database requests from parties to a loan, such as requests

for searching the database and requests for modifying the database. *Id.* at 15:59-16:2. Contrary

to Defendants' contention, the claim language does not actually require anyone to perform any of

those acts—*i.e.*, searching or modifying—for infringement to occur. Defendants' accusation that

the claims are "poorly drafted" is thus without merit. Rather, it is Defendants who have done a

poor job of reading the claims, which were clearly drafted to be infringed by a single party.

The most persuasive source for discerning the meaning of claim terms—the patent

specification—confirms this. *Phillips*, 415 F.3d at 1315 (the specification "is always highly

relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to

the meaning of a disputed term.") For example, the specification explains:

> The transaction server 110 enters loan profiles into the trading
> system database 111 *in response to requests from the broker
> stations 120*, searches the trading system database 111 *in response
> to requests from the lender stations 130*, and modifies the trading
> system database 111 *in response to changes in status for loan
> profiles stored therein*.

Dkt. No. 1, Ex. A, '947 Patent at 3:30-35 (emphasis added).

To this end, the transaction server 110 is described in the specification as including a set

of program modules. *Id.* at 4:61-6:3. As noted, for clients such as the broker stations 120, the

lender stations 130, and the administrative stations 150, the transaction server 110 operates as a

single logical server available using the network 140. *Id.* at 4:57-60. Indeed, in the preferred

embodiment of the invention, the transaction server 110 is described in the specification as

including at least the following program modules: a login module, a broker module, and a lender

module. *Id.* at 4:61-5:10. The login module is responsible for password checking, access

control, and assignment of a particular program module to service the client. *Id.* at 4:63-65.

Notably, each broker station 120 is serviced by a broker module, and each lender station 130 is

11

serviced by a lender module. *Id.* at 5:7-10. The broker module handles all server-side application requirements of the broker station 120, whereas the lender module handles all server-side application requirements of the lender station 130. *Id.* The transaction server 110 also is described in the specification as including a database interface module that handles all interface requirements between application modules (such as the broker module and the lender module) and the databases. *Id.* at 5:34-44.

The specification thus reinforces the plain language of the claims that no action by multiple parties is required for infringement. The transaction server is capable of taking certain steps "in response" to requests it receives from others. But, it is not necessary to infringement for others to make those requests. Rather, the transaction server simply must have the features necessary to make the appropriate response when accessed. And the modules for servicing the client stations to permit search and modification of the database are part of the transaction server itself. Thus, any single party that, for example, uses the claimed server and database directly infringes the patent.

Notwithstanding the clear import of the specification, Defendants' Brief curiously is devoid of nearly any reference to the specification, instead relying on the less-favored file history. Defendants' Brief at 12. But nothing in the cited excerpt describing how the invention can be used even purports to limit any of the actual claims. *See id.* Moreover, because the file history represents an ongoing negotiation between the PTO and the applicant, it often lacks the clarity of the specification and thus is less useful for claim construction purposes. *Philips*, 415 F.3d at 1317; *see also Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1380-82 (Fed. Cir. 2002) (ambiguity of the prosecution history made it less relevant to claim construction); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir.

1996) (ambiguity of the prosecution history made it "unhelpful as an interpretive resource" for claim construction). Therefore, even if Defendants' characterization of the file history were correct (it is not), it still would not overcome the plain language of the claims and specification refuting Defendants' position.

As noted, it is premature to construe the claims of the '947 patent, and claim construction is best left to be briefed and argued at the *Markman* stage on a full evidentiary record as this Court has ordered. But, even a cursory review of the plain language of the claims and the specification contradicts Defendants' redrafting of the claims to suit their flawed non-infringement theory. Moreover, even if Defendants' theory were viable, their motion still would fail. Even if joint infringement were one of IMX's infringement theories, nothing in *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), mandates "a heightened pleading standard that requires a plaintiff to plead a specific theory of vicarious liability." *See* Ex. A, *Charles E. Hill & Assocs., Inc. v. Abercrombie & Fitch Co.*, 2-07-cv-00234 (E.D. Tex. July 2, 2009, Order). And, whether the claims are jointly infringed would present a question of fact on which discovery is required. Procedurally or on the merits, Defendants' motion should be denied.

**B.  Defendants Have Failed to Show that the '947 Patent Is Invalid as a Matter of Law under 35 U.S.C. § 101.**

**1.  Defendants' § 101 Challenge Is Premature.**

Aside from its lack of merit, Defendants' invalidity challenge is premature at this stage of the proceedings. As an initial matter, an issued U.S. patent is presumed valid. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009). Whether a claim is drawn to patent-eligible subject matter is a question of law. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (*en banc*). Claim construction is an important first step in this inquiry. *Id.*

13

Here, the proceedings are at a very early stage. The parties have not even identified the terms to be construed yet, much less submitted to this Court any claim construction disputes. Defendants shed no light on these issues in their motion. Accordingly, Defendants' invalidity challenge should be dismissed as premature.

In any event, Defendants' § 101 challenge will fail on the merits under any reasonable construction of the claims. Therefore, despite the prematurity of Defendants' argument, IMX refutes it on the merits below.

**2.     The '947 Patent Satisfies the "Machine-or-Transformation" Test Articulated by the Federal Circuit in *Bilski*.**

Defendants' argument that the '947 patent is invalid under *Bilski* rests on a fundamental misunderstanding of the patent. The crux of Defendants' argument is their assertion that "no claim recites a particular machine or apparatus that limits the process claimed in any meaningful way." Defendants' Brief at 15. But the plain language of the patent refutes this argument.

In *Bilski*, the Federal Circuit adopted the disjunctive "machine-or-transformation" test as the standard for measuring whether subject matter is patentable under 35 U.S.C. § 101. *In re Bilski*, 545 F.3d at 961. Under this test, "an applicant may show that a process claim satisfies § 101 either by showing that his claim is tied to a particular machine, or by showing that his claim transforms an article." *Id.* at 961.

In applying this test, a court must examine the challenged claim as a whole and may not simply dissect and examine its individual elements. *Id.* at 958. Further, "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope to impart patent-eligibility." *Id.* at 961. Finally, "the involvement of the machine or transformation in the claimed process must not merely be insignificant extra-solution activity." *Id.* at 962.

Here, IMX addresses only the "machine" branch of the *Bilski* test, and not the

14

"transformation" branch. Because the applicant in *Bilski* conceded that its claim was not tied to a particular machine or apparatus, the Federal Circuit gave little guidance on this branch of the test. *Id.* Rather, the Federal Circuit simply noted: "We leave to future cases the elaboration of the precise contours of machine implementation, as well as the answers to particular questions, such as whether or when recitation of a computer suffices to tie a process claim to a particular machine." *Id.*

The Federal Circuit has addressed the "machine" test once since *Bilski*. *See In re Ferguson*, 558 F.3d 1359 (Fed. Cir. 2009). In *Ferguson*, the Federal Circuit held that the applicants' method claims were not patent-eligible because they were not tied to any particular machine or apparatus. *Id.* at 1364. The court explained that "[a]lthough Applicants argue that the method claims are tied to the use of a shared marketing force, a marketing force is not a machine or apparatus." *Id.* The court then adopted the definition of a "machine" that it had articulated in another case two years earlier:

> As this court recently stated in *In re Nuijten*, 500 F.3d 1346 (Fed. Cir. 2007), a machine is a concrete thing, consisting of parts, or of certain devices and combination of devices. This includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result.

*Id.* (internal quotation marks and citations omitted). The court concluded that the method claims were not patent-eligible because "Applicants' method claims are not tied to any concrete parts, devices, or combination of devices." *Id.*

Here, by contrast, IMX's claims clearly are tied to a particular "concrete thing, consisting of parts, or of certain devices and combination of devices." As an initial matter, because *Bilski* applies only to method claims, 545 F.3d at 961, Defendants' argument immediately fails as to the '947 patent's system claims. Defendants' characterization of claim 19 as a "process" claim is

15

wrong because claim 19 clearly recites a database and transaction server with certain capabilities and does not describe a process. *Compare* Dkt. No. 1, Ex. A, '947 Patent at 15:59-16:2 *with* Defendants' Brief at 16. Moreover, all of the method and system claims of the patent include at least a transaction server or database server. *See* Dkt. No. 1, Ex. A, '947 Patent at 14:66-16:64. And, this server must be adapted to maintain the database of loan applications and permit searching and modification of the database in the manner required by the claims. *Id.*

The specification gives further details concerning the preferred embodiment of the transaction server. *See, e.g., id.* at 3:17-52. For example, the transaction server "comprises a device or set of devices coupled to the network 140." *Id.* at 3:18-19. This device can be "a general purpose processor operating under control of operating system and application software, and disposed to respond to messages from the broker stations 120, the lender stations 130, and the system monitor stations 160, as described herein." *Id.* at 3:19-24. The specification further notes that, in a preferred embodiment, the transaction server "can comprise a Unix server such as a Sun UltraSparc processor operating under control of the Solaris operating system." *Id.* at 3:24-27. The transaction server also "includes a trading system database 111, a geographic database 112, and a set of external interfaces 113." *Id.* at 3:28-30. Accordingly, any argument that this server is not a particular "concrete thing, consisting of parts, or of certain devices and combination of devices," *Ferguson*, 558 F.3d at 1364, fails to pass the straight-face test.

Further, as shown above, the transaction server and database server "impose meaningful limits on the claim's scope." *Bilski*, 545 F.3d at 961. Indeed, the presence or use of a server that has the recited capabilities is the very essence of the claim. And, the involvement of the server in the claims is far more than "insignificant extra-solution activity." *Id.* at 962. In fact, the presence or use of the claimed server to make possible the loan-related transactions discussed in

16

the patent is the heart of the solution that the patented invention supplied. *See* Section II.B, *supra*. As a result, all of IMX's claims recite patent-eligible subject matter as a matter of law.

### 3. Defendants Are Not Entitled to a Stay Pending the Supreme Court's Decision in *Bilski*.

In wholly conclusory fashion, Defendants ask in the alternative that this Court stay the case pending the United States Supreme Court's decision in *Bilski*. Defendants' Brief at 1, 20. But, Defendants make no effort to satisfy the traditional equitable test for obtaining the extraordinary relief of a stay pending the outcome of other proceedings. *See, e.g., Gonzalez v. Reno*, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438-39 (5th Cir. 2001). Moreover, the proceedings for which Defendants want this case delayed are not even directly related to this case. Defendants' failure to even attempt a meaningful showing alone warrants denial of their stay request.

Defendants could not show that a stay is proper even if they tried. As shown above, the '947 patent is valid under the Federal Circuit's decision in *Bilski*. If the Supreme Court affirms *Bilski*, then the result will of course be the same. And if the Supreme Court reverses *Bilski* and broadens the scope of patentable subject matter, then the result still will be the same—the '947 patent will simply clear the bar that much more easily. Accordingly, there is no realistic prospect that the Supreme Court's decision in *Bilski* will aid Defendants in this case. What the Supreme Court does with the issue of patentable subject matter is purely speculative at this point.

Further, Defendants cannot show any cognizable irreparable harm from proceeding with this action, whereas IMX would be prejudiced by the delay in vindicating its patent rights. Indeed, it is possible that a decision in *Bilski* will not come before late June 2010. Finally, staying this case pending *Bilski* would set a highly disruptive precedent. If every case potentially affected by a pending Supreme Court case were stayed until a Supreme Court decision, dockets

17

would become heavily backlogged.  Consistent with routine practice, any effect that the Supreme Court's decision in *Bilski* has on this case can be addressed when that decision is rendered.

**C.    It Would Also be Premature to Treat Defendants' Motion as One for Summary Judgment at this Early Stage of the Proceedings.**

As shown above, Defendants' motion fails on all asserted substantive grounds even if treated as a motion for summary judgment.  Even if Defendants' theories were to have had any substantive merit, summary judgment still would be improper on additional procedural grounds.

**1.    Standard for Summary Judgment**

Summary judgment should not be granted unless the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), FED. R. CIV. P.  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Likewise, a fact is "material" if it may affect the outcome of the suit under governing law.  *Id.*  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hickson Corp. v. Northern Crossarm Co., Inc.,* 357 F.3d 1256, 1259-60 (11th Cir. 2004).  In deciding whether to grant summary judgment, the Court must evaluate the evidence and all factual inferences in the light most favorable to the party opposing the motion, and resolve all reasonable doubts in favor of the non-movant.  *See Hyman v. Nationwide Mut. Fire. Ins. Co.,* 304 F.3d 1179, 1185 (11th Cir. 2002).

**a.    Defendants' Motion for Summary Judgment Is Procedurally Flawed Per Local Rule 7.5 and Should be Denied Outright.**

Defendants' alternative motion for summary judgment is procedurally deficient because,

18

as they admit, they failed to include the requisite statement of undisputed facts mandated by Local Rule 7.5. Defendants' Brief, at p. 19, n. 4. Though Defendants argue that all that is required for the Court to resolve its motion are the '947 patent and its file history, Defendants raise several issues of material fact in support of their argument, all wholly unsubstantiated by any declarations, deposition testimony, or other evidence. In fact, all of Defendants' non-infringement "evidence" simply is attorney argument. For example, Defendants provide no factual support for their claim that they have no contractual relationship of any kind with borrowers that use their accused instrumentalities (even if such a requirement were even necessary to satisfy claims 1 or 19, which it is not). Defendants' Brief at 19. Without a statement of undisputed facts as required by the Local Rules, Defendants' motion for summary judgment is procedurally deficient and should be denied outright. *See, e.g., White v. NCL America, Inc. & Norwegian Cruise Line Ltd.*, 2007 WL 414331, *1 (S.D. Fla. 2007).

### b.    Summary Judgment Cannot Be Entered Before Discovery.

Even if the Court were not to deny Defendants' motion on the grounds shown above, IMX would be entitled to appropriate time to conduct discovery pursuant to Federal Rule of Civil Procedure 56(f).[3]  Summary judgment is proper only after the non-movant has had adequate time for essential discovery. *See, e.g., Cowan v. J.C. Penney Co., Inc.*, 790 F.2d 1529, 1532-33 (11th Cir. 1986) ("[S]ummary judgment is premature when the moving party has not answered the opponent's interrogatories[,] ... especially ... where [the] ... interrogatories ... request information that is critical to the issues in dispute."); *Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1582 (Fed. Cir. 1993) ("[S]ummary judgment should

---

[3] To the extent necessary, IMX submits contemporaneously herewith a formal request for necessary discovery pursuant to Federal Rule of Civil Procedure 56(f). *See* Local Rule 7.5; Declaration of William Goldman in support of IMX, Inc.'s Request for Further Discovery Pursuant to the Federal Rules of Civil Procedure.

'be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

Defendants make several unsupported factual claims in their motion in an affirmative attempt to thwart all discovery in this case. For example, even if multiple actors were required to infringe claims 1 or 19 (and again, such a requirement is purely imaginary), IMX is entitled to discovery regarding E-Loan's and Banco Popular's systems and processes for receiving and processing loan applications to refute Defendants' claim that they have "no contractual relationship" with their borrowers. *See* Defendants' Brief at 19. IMX should not be forced to take Defendants on their unsubstantiated word that they do not infringe. *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843-44 (11th Cir. 1989). Indeed, based only on public information, IMX already has good reason to believe that Defendants not only directly infringe the '947 patent solely as a result of their own conduct, but that each also has some type of contractual relationship with their borrowers, or acts as agents in privity with borrowers, by virtue of their Internet banking and mortgage activities. At the very least, the Court should permit IMX to conduct discovery of the Defendants to further establish facts in support of this and other arguments pursuant to Federal Rule of Civil Procedure 56(f).

The failure of Defendants' legal arguments is sufficiently apparent to deny their motion on the merits. But even if Defendants' motion were to have any plausibility, no ruling adverse to IMX could be entertained before the Court has construed the asserted claims and discovery has occurred.

## IV.    CONCLUSION

For these reasons Defendants' motion should be denied it its entirety.

ASTIGARRAGA DAVIS MULLINS
& GROSSMAN, P.A.
Local Counsel for Plaintiff
701 Brickell Avenue
16th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile (305) 372-8202

By: _____/s Edward M. Mullins_____
          Edward M. Mullins
          Chalon T. Allen
          Fla. Bar Nos. 863920 & 0573507
          emullins@astidavis.com

-AND-

M. Elizabeth Day (Bar No. 177125)*
William G. Goldman (Bar No. 203630)*
Erik R. Fuehrer (Bar No. 252578)*
DLA PIPER LLP (US)
2000 University Ave.
East Palo Alto, CA 94303
Telephone:  650.833.2000
Fascimile:  650.833.2001

Lead Counsel for Plaintiff IMX, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2009, I filed the foregoing document with the Clerk of

the Court who will generate Notices of Electronic Filing to all counsel of record or other persons

authorized to receive Notice of Electronic Filing generated by CM/ECF, including counsel for

Defendants, Samuel A. Lewis, Feldman Gale, 2 South Biscayne Boulevard, 30th Floor, Miami,

Florida 33131.

                    _____/s Edward M. Mullins_____
                    Edward M. Mullins