UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IMX., INC., d/b/a GLOBAL NETOPTEX,      CASE NO. 09-20965-CIV-MARTINEZ
INC.,      Magistrate Judge Brown

           Plaintiff,

vs.

E-LOAN, INC. and BANCO POPULAR
NORTH AMERICA, INC.,

           Defendants.

_____/

## RENEWED MOTION TO DISMISS WITH PREJUDICE, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants, E-Loan, Inc. ("E-Loan") and Banco Popular North America, Inc. ("Banco Popular")(collectively, E-Loan and Banco Popular may be referred to as "Defendants"), pursuant to FED.R.CIV.P. 12, respectfully move this Court for entry of an Order:

     A.      dismissing this action with prejudice;

     B.      or in the alternative, converting this into a Motion for Summary Judgment and dismissing this action with prejudice;

     C.      or in the alternative, staying this matter pending the U.S. Supreme Court's review of *In Re Bilski,* 545 F.3d 943 (Fed.Cir. 2008).

## MEMORANDUM OF LAW

## I.      INTRODUCTION.

Now that the Plaintiff has amended its complaint to address *procedural deficiencies* by identifying the allegedly infringing services, this Court may properly dispose of Plaintiff's claims either by dismissing this action with prejudice, or by converting this motion to summary judgment. As a matter of law, the claims of the patent in suit do not satisfy the "single actor rule," and therefore, cannot be infringed by either of the Defendants.

Moreover, there is now no question whatsoever that the patent in suit is invalid. In a final rejection of one of Plaintiff's related patent applications, the U.S. Patent & Trademark Office

1

Case No. 09-20965-CIV-MARTINEZ

determined that claims similar to those involved in this action were invalid under *In re Bilski,* 545 F.3d 943 (Fed.Cir. 2008), because the claims did not meet the Federal Circuit's "machine or transformation" test.

Ultimately, the deficiencies in Plaintiff's Amended Complaint and the patent in suit raise issues of law that should be resolved by this Court without having to resort to the necessity of a full-blown trial, or even discovery beyond the patent at issue and its related prosecution history. Accordingly, this Court should immediately dismiss this action with prejudice.

## II.     RELEVANT FACTUAL BACKGROUND.

Plaintiff alleges that it is the owner of U.S. Patent No. 5,995,947 (the "'947 Patent"), a copy of which is attached to the Amended Complaint as Exhibit "1." *See* Amended Complaint, ¶7.

### A.     The '947 Patent Cannot Be Directly Infringed By Defendants Because The Claims Require A "Borrower."

On its face, the '947 Patent is not enforceable against either of the two Defendants. That is because the '947 Patent specifically requires an act by or on behalf of a "borrower." Yet, Defendants themselves are not "borrowers," are not alleged to be "borrowers," do not exercise direction or control over "borrowers," and are not alleged to exercise such direction or control over "borrowers."

The '947 Patent relates to the dissemination of loan application information or lending program information for automated comparison in real time. ('947 Patent, Col. 1:51-67 and Col. 2:1-56). Specifically, the '947 Patent covers a process for the trading of loans in real-time by making loan applications and placing them up for bid by a plurality of potential lenders. ('947 Patent, Col. 2:12-15, 60, 66-67; and Col. 3:1). Stated in plain English, the '947 Patent describes an idea where a potential ***borrower*** can, through a website, enter loan application information and in real-time, receive "bids" or offers from potential ***lenders*** seeking to provide the loan to the ***borrower*** or ***borrower***s.

Claim 1 requires "each party to a loan" to search and modify a database "consistent with ***their role*** in the transaction by requests to said server ***from a client device identified with their***

2

Case No. 09-20965-CIV-MARTINEZ

*role*."[1] ('947 Patent, Col. 15:2-5 (emphasis supplied)).  On its face, Claim 1 requires *lending* and *borrowing* entities, i.e., the parties to a loan, to make requests related to the particular loan transaction.  These requests are made from a lender device and a borrower device, i.e., the devices identified with the corresponding roles.

Claim 19 recites limitations analogous to those in claim 1.[2]  For example, claim 19 requires a transaction server "being responsive *in real time* to requests *from parties to said pending loan applications*, said requests including requests for searching and requests for modifying said database consistent with *roles for said parties*." ('947 Patent, Col. 15:64-67, Col. 16:1-2 (emphasis supplied)).  Claim 19 commands a real time response to requests from lending and borrowing entities.  Had the claim read "requests from at least one party to said pending loan application," it would have required *either* a borrower or a lender to make the request.  This is further supported by the Abstract of the '947 Patent which states that "the invention provides a method and system for trading loans in real time."  Thus, it is clear from the patent itself that responses from *both* lending and borrowing entities are needed to enable real-time trading.

Indeed, the Specification of the '947 Patent supports Defendants' arguments in this regard.  For example, the Specification clearly indicates that the main *parties* to a loan transaction are *borrowers and lenders*. ('947 Patent, Col. 1:17-19).  The process of trading mortgage and loan information takes place in *real-time and interactively*.  ('947 Patent, Title, Col.1:5-8, Col. 2:58-62, Col.3:10-12, and Col. 9:29-31 (emphasis supplied)).

In sum, each and every claim of the '947 Patent requires a specific action by at least one *borrower*: to make requests.  Plaintiff has accused E-Loan, a former lending institution, and

---

[1] Claim 1 states as follows:  "A method for processing loan applications, said method including the steps of maintaining a database of pending loan applications and their statuses at a database server, wherein *each party to a loan* can search and modify that database consistent with their role in the transaction by requests to said server from a client device identified with their role." (emphasis supplied).

[2] Claim 19 states as follows:  "A system for processing loan applications, said system including a database of pending loan applications, said database including status information regarding said pending loan applications; a transaction server, said transaction server being *responsive in real time to requests from parties* to said pending loan applications, said requests including requests for searching and requests for modifying said database consistent with roles *for said parties.*" (emphasis supplied).

3

Banco Popular, a banking institution that happens to own the shares of stock of E-Loan, of infringing at least one of these claims of the '947 Patent. *See* Amended Complaint, ¶¶ 10, 15. Yet, as is clear from the face of the patent, such infringement cannot take place without a "borrower," and neither E-Loan nor Banco Popular are, or are alleged to be, "borrowers."

**B.   The '947 Patent Cannot Be Infringed By Defendants As A Matter Of Law Because The '947 Patent Is Invalid.**

Even though Plaintiff's patent was presumed valid at the time it was issued, such as presumption rebuttable is only presumed.  This patent is not valid under recently issued and currently binding precedent because a patent claiming a process or method must either (1) be "tied to a particular machine," or (2) "transform[] a particular article into a different state or thing." *See In re Bilski,* 545 F.3d 943 (Fed.Cir. 2008).  Based upon the facts before the Court and the legal standards discussed below, this Court must hold that the '947 Patent is invalid because the claims only recite general computers without anything particular about them and the process claimed do not transform any physical objects or representations thereof into another thing or state.  Thus, under the Federal Circuit's recently issued *en banc* decision in *Bilski* and the other decisions cited below, the '947 Patent is invalid.[3]

**1.   The processes described in the '947 Patent are not "tied to a particular machine."**

The various references to servers in the '947 Patent identify nothing more than general purpose computers.  Since general purpose computers are not sufficient to satisfy the requirement that methods be "tied to a particular machine," the methods claimed in the '947 Patent do not, as a matter of law, constitute patentable subject matter under 35 U.S.C. §101.

The claims in the '947 Patent cover a process and recite very little structure.  Only the following five claim terms can be considered to constitute physical elements: database server, client device, transaction server, broker station, and lender station.  Claim 1, for example, recites

---

[3] Moreover, Plaintiff is well aware that the claims in the '947 Patent are invalid as a result of *Bilski*.  In June, 2009, in connection with a related continuing patent application *that shares the identical specification* as the '947 Patent, Plaintiff received a final rejection from the United States Patent & Trademark Office ("USPTO") based upon, *inter alia,* the failure of the claims to constitute patentable subject matter under *Bilski*.  A copy of the final rejection is attached as Exhibit "A."

Case No. 09-20965-CIV-MARTINEZ

a database server and a client device.  Claim 19 on the other hand only recites the transaction server.

None of the limitations in the dependent claims add anything meaningful to those terms that would help to clarify their meaning.  The Specification of the '947 Patent sheds only minimal light into the meaning of the terms, using the term "database server" interchangeably with "transaction server." ('947 Patent, Col. 2:5-6, 15-17).  The Specification clearly discloses that this transaction server is nothing more than a "general purpose processor" with nothing particular about it. ('947 Patent, Col. 3:18-20).  It follows that the "database server" of claims 1-18 as well as the "transaction server" of claims 19-38 only cover a general computer without more.  The patentee's decision to use only a "black box" in Fig. 1 of the patent to describe the transaction server shows that there is nothing particular about the transaction and database servers recited in the claims. ('947 Patent, Fig. 1, numeral 110).  In sum, the claims, the Specification, and the drawings fail to define either transaction server or database server as being anything more than a general purpose computer.[4] *See Ex Parte Cornea-Hasegan,* 89 U.S.P.Q.2d 1557, *5 (Bd.Pat.App. & Interf. 2009)(recitation of "processor" which "is nothing more than a general purpose computer that has been programmed in an unspecified manner" incapable of overcoming requirement of being tied to a particular machine); *In re Ex Parte Halligan,* 89 U.S.P.Q.2d 1355 (Bd.Pat.App. & Interf.)(reaching the same conclusion for phrase "programmed computer").

Since the methods claimed in the '947 Patent are not tied to anything more than a general purpose computer, the claims do not satisfy the requirement of being "tied to a particular machine," and therefore, the claims do not constitute patentable subject matter under 35 U.S.C. § 101.

---

[4] Similarly, the Specification of the '947 Patent does not clearly define the "client device," "broker station" and "lender station." Like the transaction server, both the "broker station" and the "lender station" are defined by the Specification as "general purpose processor[s]" with nothing particular about them. ('947 Patent, Col. 6:4-7 and Col. 7:4-7).  Just as the patentee decided to use a 'black box" to describe the transaction server in figure 1, the patentee also used black boxes to describe the "broker station" and the "lender station." ('947 Patent, Fig. 1, numerals 120 and 130).  Again, the claims, the Specification, and the drawings fail to define a client device, lender station, or a broker station as being anything more than a general purpose computer.

5

Case No. 09-20965-CIV-MARTINEZ

2.     **The '947 Patent does not "transform[] a particular article into a different state or thing."**

While the methods claimed in the '947 Patent are not "tied to a particular machine," the methods could still constitute patentable subject matter under 35 U.S.C. § 101 if the methods "transform an article into another thing or state."  In this case, however, it is readily apparent that the claims do not "transform[] an article into another thing or state."

As noted above, the '947 Patent covers a process for the trading of loans in real-time by making loan applications and placing them up for bid by a plurality of potential lenders. ('947 Patent, Col. 2:12-15, 60, 66-67; and Col. 3:1).  Fig. 2 in the '947 Patent illustrates the process flow of the operation "of an interactive mortgage and loan information and real-time trading system." ('947 Patent, Col. 2:60-63).  A review of that figure reveals that none of the steps in the process cover the "transformation of an article into another thing or state." Specifically, referring to the numerals in Fig. 2, the general steps or actions of providing (221), logging (222, 241, 271, 291), entering (223, 293), reviewing (224, 247, 272), selecting (225, 248, 273), transmitting (226, 243, 249, 250, 274, 276, 277, 292), validating (227), computing (228, 229), determining (242), looking up (244), responding (245), viewing (246), notifying (275), and advising (294) do not suggest the transformation of an article—which is defined by the Federal Circuit as a physical object, a substance, or representation thereof—into another thing or state.[5]

The claims of the patent recite "a database of pending loan applications." These loan applications themselves cannot be said to constitute either a physical object or a substance as they would not be capable of storage in a database. ('947 Patent, Col. 3:36-67).  Indeed, none of the data in a database, by its very nature, can be said to constitute a physical object or substance. ('947 Patent, Col. 3:53-67).

Undoubtedly, Plaintiff is well aware that the methods claimed in the '947 Patent do not "transform an article into another thing or state." *See, e.g.,* Exhibit "A" (Final rejection from the USPTO of a related patent application).  Not only does the final rejection highlight the very

---

[5] As will be explained, *infra,* the issue of whether there is a "transformation of an article into another thing or state . . ." is an essential requirement necessary to pass the rigorous standards recently set forth in the *en banc* decision of *In re Bilski*, 545 F.3d 943 (Fed.Cir. 2008). Without the "machine or transformation test" being met, the patent is invalid as a matter of law.

6

problems addressed here, it also highlights that "data gathering and outputting" constitute mere "insignificant post-solution activity," rather than patentable subject matter. *Id.*

Since it is readily apparent that the methods claimed in the '947 Patent do not transform "a particular article into different state or thing," then as a matter of law, the methods claimed do not constitute patentable subject matter under 35 U.S.C. §101.

## III.   ARGUMENT.

### A.   Plaintiff's Amended Complaint Should Be Dismissed With Prejudice.

#### 1.   Legal Standard For Dismissal.

Dismissal is appropriate where, based on a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. *Nietzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827 (1989); *Glover v. Ligget Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006); *Marshall Cty Bd. Of Educ. v. Marshall Cty Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Conclusory allegations or legal conclusions masquerading as factual allegations cannot prevent a motion to dismiss. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

When the allegations of the Amended Complaint are considered, it becomes apparent that the Plaintiff cannot satisfy the "single actor" rule, and therefore, neither Defendant can be found liable for patent infringement as a matter of law.  Likewise, the '947 Patent is invalid as a matter of law based upon its failure to satisfy the "machine or transformation" test imposed by the Federal Circuit.  Either of these issues alone is sufficient to justify dismissal of this action with prejudice.

#### 2.   Defendants Are Not Liable For Infringement As A Matter Of Law Plaintiff Cannot Satisfy The "Single Actor" Rule.

Plaintiff's claims against Defendants fail, as a matter of law, because neither Defendant is alleged to have performed or used ***all*** of the steps or elements of the method claimed in the '947 Patent.  This is the "single actor" rule.

Case No. 09-20965-CIV-MARTINEZ

In *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), the Federal Circuit Court of Appeals[6] made it explicitly clear that direct infringement under 35 U.S.C. § 271(a) requires a defendant to perform or use *all*, not just some, steps or elements of a claimed method or product.  *Id.* at 1380.  In the event that *one original party* does not perform or use *all* steps or elements, the only way the original party may be held liable for direct infringement is if the Court finds that the original party "directed or controlled" *another party* performing or using the remaining steps or elements. *Id.* at 1381-1382.

More recently, in *Global Patent Holdings*, Judge Marra held that where a defendant did not carry out *all* of the steps of a patented method itself, dismissal of the complaint was warranted. *Global Patent Holdings,* 586 F.Supp.2d at 1335.  Similarly, the mere failure to *allege* that the defendant carried out all of the steps is sufficient to support a dismissal. *Id.*  Here, Plaintiff cannot allege that either E-Loan or Banco Popular carries out or uses *all* steps or elements of the claims in the '947 Patent because, as set forth in the '947 Patent itself, each and every claim in the patent requires both borrowers *and* lenders (i.e., each party to a loan) to make requests to a database. ('947 Patent, Col. 1:17-19, Col. 15:2-5, 67-69, and Col. 16:1-2).  In other words, the '947 Patent cannot be infringed unless both lenders and borrowers make requests in real-time.

In *Global,* as in the present case, the defendant filed a motion to dismiss for failure to state a claim. *Global Patent Holdings,* 586 F.Supp.2d at 1333.  Defendant argued in the motion that the case should be dismissed because plaintiff failed to allege that defendant performed each and every step of the patented claim and also failed to allege sufficient "direction or control" over third party "joint infringers." *Id.*  The patent at issue in *Global* related to a method for downloading responsive data from a remote server.  *Id.* at 1333.  That method included a step of "receiving compressed or non-compressed response to said query *at said remote query and data retrieval means* from said *remoter server* via said input/output means. . . ." *Id.*  The patent thus required two individuals or entities to complete all the steps: an end user associated with the retrieval means and a remote server, which was operated by the defendant.  *Id.* at 1335.  The

---

[6] In analyzing claims arising under the United States patent laws this Court is bound by the decisions of the Federal Circuit. *Global Patent Holdings, LLC v. Panthers BRHC, LLC*, 586 F.Supp.2d 1331, 1333-1334 (S.D. Fla. 2008).

Case No. 09-20965-CIV-MARTINEZ

Court noted that plaintiff did not allege that defendant, who owned the remote server, carried out the "receiving" step, and then turned its focus on the "direction or control" test of BMC Resources. *Id.* at 1335.

The plaintiff in *Global* argued that the end user's actions were controlled by defendant because defendant put computer programs on the remote user's computer to allow the claimed process to begin. *Id.* The Court disagreed with plaintiff and held that merely because a third party went to a website did not mean that the defendant exercised the "requisite control" over the third parties because those remote users were not contractually bound by defendants to visit defendant's website (at the remote server). *Id.* at 1335. More importantly, the Court noted that plaintiff (1) did not allege the remote users were contractually bound to visit the defendant's website, (2) did not allege that the remote users were defendant's agents that visited the website within the scope of that agency relationship with defendant, and (3) did not allege any facts which would render defendant otherwise vicariously liable for the acts of the remote user. *Id.* The Court, guided by the Federal Circuit's decision in *BMC Resources*, sided with defendant and dismissed the complaint with prejudice. *Id.* at 1336.

The facts of *BMC Resources* are also analogous to the facts of the present case, as both the '947 Patent and the patent at issue in *BMC Resources* relate to banking transactions and process patents related thereto. *BMC Resources*, 498 F.3d at 1375. Specifically, the patent in *BMC Resources* covered a method of processing debit transactions without need for a personal identification number. *Id.* at 1375. The claimed method requires a bank's customer to use his telephone keypad to conduct banking transactions. *Id.* Using his telephone, the bank's customer keys in information that is first sent to a debit network and then to a bank or other financial institution. *Id.* The defendant in *BMC Resources* was a payment processor that received customer payment information from merchants and sent it to the debit network, which in turn sent it to the bank for authorization. *Id.* After authorization of the transaction, the bank relayed information back to the defendant (i.e., the payment processor), which in turn sent it to the merchant and then to the customer. *Id.*

The Federal Circuit in *BMC Resources* held that the defendant payment processor could not be held liable for direct infringement because it performed only ***some*** steps of the patented method. *Id.* at 1378-80. The claim turned out to be poorly drafted because it recited the

9

combined action of several actors or participants and there was no evidence that the defendant controlled or directed the acts of the other actors.  *Id*. at 1375, 1382.

Like the claims in *Global* and *BMC Resources*, the claims of the '947 Patent require action from multiple actors, namely, from "each party to a loan" or "parties to said pending loan application." ('947 Patent, Col. 15:2-5, 65-66, and Col. 16:1-2).   The Specification of the '947 Patent defines these main parties as borrowers and lenders. ('947 Patent, Col. 1:17-19). The foregoing is further corroborated by considering the file history of the '947 Patent.[7]

On March 12, 1999, an Amendment was filed in connection with the prosecution of the application that matured into the '947 Patent.  *See* Exhibit "B."   On page 2 of the Amendment, the attorney for the inventors characterized the invention as follows:

> The invention addresses inefficiencies in the process of obtaining a loan. Aspects of the invention include methods and systems for automating processing of loan applications, placing these loan applications up for bid by a number of potential lenders, and tracking these loan applications and their corresponding bids.  ***Each party*** to the loan (for example, the lender (lending institution, loan maker, loan purchaser, pg. 17, lns. 21-23) and the broker (***loan originator***, pg. 15, lns. 8-11)) ***uses*** its role specific client device (lender station, broker station, etc.) to ***submit*** loan profile (pg. 8, lns.7-8; pg. 15, ln. 20 – pg. 16, ln. 2), ***search*** for loan applications that meet the lender specified criteria (pg. 18, lns. 1-8), submit bids on particular loan applications (pg. 18, lns. 1-8), and receive, review, accept or reject these bids (pg. 15, ln. 20-pg. 16, ln. 2; pg. 18, ln. 3)

*See* Exhibit "B" at p. 2 (emphasis supplied).

---

[7] Exhibit "B" is part of the USPTO file history for the '947 Patent, and E-Loan and Banco Popular respectfully renew their request that this Court take judicial notice of the USPTO file history for the '947 Patent.  The Court may take judicial notice of records from the USPTO and certified copies of such records are self-authenticating. *See* Fed.R.Evid. 201 & 902; *S.E.C. v. Dunlap*, 2002 WL 1007626, *1 (S.D. Fla., March 27, 2002) (court may take matters of public record into account when determining whether to grant a Rule 12(b)(6) motion); *see also Omega S.A. v. Omega Engineering, Inc.*, 228 F.Supp.2d 112, 120 & fn.26 (D.Conn. 2002)("copies of trademark registrations are admissible" and self-authenticating); *Nabisco v. Warner-Lambert Co.*, 32 F.Supp.2d 690, 695 (S.D.N.Y. 1999)("certified copies of federal trademark registrations are also sufficiently authenticated by virtue of their certified status.").  The file history consists of the entire record of the proceeding before the USPTO, and provides evidence of how the inventors and the USPTO understood the invention.  A copy of the file history for the '947 Patent was filed with the Court and appears at [D.E.#17]; a certified copy will be provided upon request.

Case No. 09-20965-CIV-MARTINEZ

If no borrower (i.e., loan originator) ever made a request to search the loan database, the patent would never be infringed. ('947 Patent, Col. 15:1-5). For Plaintiff to establish that E-Loan (or Bunco Popular) carries out or uses *all* elements of the claims, Plaintiff would have to ultimately show that E-Loan is acting *both* as a lender and a borrower in the *same* loan transaction. The absurdity of such a situation is readily apparent, but nonetheless, that is precisely what Plaintiff would need to allege and prove in order to prove direct infringement under 35 U.S.C. § 271(a). Plaintiff simply has no good faith basis for making the requisite allegations in order to avoid this problem.

Plaintiff amended its Complaint, and thus, had the opportunity to plead around the deficiency by alleging "joint infringement" under 35 U.S.C. § 271(a).[8] Joint infringement can be established when a Defendant does not perform or use each and every step or element of a patented claim but directs or controls the party carrying out or using the remaining steps or elements of that claim. *BMC Resources*, 498 F.3d at 1380. This direction or control requires more than, for example, a bank instructing borrowers to follow instructions from the bank's website to perform the steps of a claim. Instead, to qualify as direction or control the bank would have to bind the borrower through contract to force the borrower to carry out the steps of the claim for the bank to be a "joint infringer." *Global*, 586 F.Supp.2d at 1335. Alternatively, borrowers would have to be agents of the bank for a finding of joint infringement. *Id.* However, having the opportunity to include allegations in an effort to avoid the limitations of the "single actor" rule, Plaintiff declined to include the necessary allegations in its Amended Complaint. Since Plaintiff has failed to allege that E-Loan is either a direct or a joint infringer under 35 U.S.C. §271(a) or that it exerts direction or control over borrowers (i.e., the "other" party to a loan), the Amended Complaint must be dismissed with prejudice. It follows that the lawsuit against Banco Popular must be dismissed with prejudice for the very same reasons.

---

[8] The Federal Circuit recently observed that "joint infringement" theories rarely succeed. "Courts faced with a divided infringement theory have also generally refused to find liability where one party did not control or direct each step of the patented process." *BMC Resources,* 489 F.3d at 1380 (*citing BMC Res., Inc. v. Paymentech, L.P.,* 2006 WL 306289, *6 (N.D. Tex.) ("No court has ever found direct infringement based on the type of arms-length business transaction presented here."); *Faroudja Labs. v. Dwin Elecs., Inc.,* 1999 WL 111788 (N.D. Cal.), *Mobil Oil Corp. v. Filtrol Corp.*, 501 F.2d 2782, 291-92 (9th Cir. 1974)(expressing doubt over the possibility of divided infringement liability)).

11

Case No. 09-20965-CIV-MARTINEZ

While Plaintiff may claim that dismissal of the Amended Complaint is a drastic measure, the simple truth is that the claims in the '947 Patent are poorly drafted.  As noted by the Federal Circuit in *BMC Resources*, a patentee can usually draft a claim to capture infringement by a single party.  *BMC Resources*, 498 F.3d at 1381.  Here, the patentee could have drafted a claim to focus on one entity, but instead chose to have "each party to a loan" perform different acts within one claim.  This Court cannot unilaterally redraft the claims or the standards for joint infringement to remedy these "ill conceived claims." *Id.*

> **4.      Plaintiff Has Failed To Plead Facts To Support Allegations Of Induced And Contributory Infringement.**

Plaintiff has also accused Defendants of both induced and contributory infringement.  *See* Amended Complaint, ¶¶ 10, 15.  Induced and contributory infringement constitute indirect infringement.  *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1272 (Fed. Cir. 2004).  Plaintiff has not pled facts to support its indirect infringement allegations.

A claim for indirect infringement requires a predicate finding of direct infringement. *Global,* 586 F.Supp.2d at 1335.  As discussed above in Section III(A)(3), Plaintiff has not and cannot pled facts alleging direct infringement.  Therefore, Plaintiff cannot state a claim for either induced or contributory infringement.  *Id*.

> **5.      The '947 Is Invalid As A Matter Of Law Because It Does Not Claim Statutory Subject Matter As Required By 35 U.S.C. § 101.**

The purpose of Rule 12(b)(6) is to allow courts to "eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).  Accordingly, a Rule 12(b)(6) motion may be grounded on an affirmative defense. *Id.* at 1161.  Patent invalidity is an affirmative defense to patent infringement.  *See MedImmune, Inc.  v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764 (2007).

Invalidity of a patent for failure to claim statutory subject matter under 35 U.S.C. § 101 is a question of law.  *See AT&T Corp. v. Excel Comm Inc.,* 172 F.3d 1352 (Fed. Cir. 1999).  This Court can invalidate the '947 on any substantive ground, including failure to meet the

Case No. 09-20965-CIV-MARTINEZ

requirements of 35 U.S.C. § 101, whether or not that ground was considered by the USPTO.[9] *See Magnivision Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997).

Section 101 of the Patent Act provides:

> Whoever invents or discovers any new and useful **process, machine**, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title.

35 U.S.C. § 101 (emphasis supplied).

The Federal Circuit recently stated in an *en banc* decision that a process is patentable under 35 U.S.C. § 101 **only if** "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008). Before *Bilski*, the standard for patentability was less strict. All that was necessary was that a claimed invention produce a "useful, concrete and tangible result." *AT&T Corp. v. Excel Communications, Inc.*, 172 F.3d 1352, 1357 (Fed. Cir. 1999); *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368, 1373 (Fed. Cir. 1998). *Bilski* expressly rejected that test as being inconsistent with Supreme Court precedent and promulgated a narrower test—the "machine-or-transformation test." *Bilski*, 545 F.3d at 959-60. The *Bilski* test requires that a claimed invention do more than merely produce a "useful" result to be patentable. The claimed invention must be tied to a specific machine or a physical transformation.

The '947 Patent covers a process for the trading of loans in real-time by making loan applications and placing them up for bid by a plurality of potential lenders. ('947 Patent, Col. 2:12-15, 60, 66-67; Col. 3:1). Claim 1 recites a process for loan applications while claim 19

_____

[9] The Court does not need to delay its decision as to whether the '947 Patent is invalid in light of *Bilski* and other references cited herein. Indeed, there is no requirement that district courts construe the claims of a patent at any particular time in patent infringement actions. *Network Commerce Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1364 (Fed.Cir. 2005). In fact, construing the claims for the purpose of adjudicating a motion that would dispose of the case is entirely proper. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)(en banc), *aff'd,* 517 U.S. 370 (1996). While no doubt Plaintiff will seek to delay the resolution of a claim of invalidity, Plaintiff will be hard-pressed to cite binding precedent that supports the absurd proposition that a court should avoid construing a handful of terms that would allow it to dispose of a case in favor of requiring the parties to expend tremendous resources unnecessarily litigating the case.

13

Case No. 09-20965-CIV-MARTINEZ

recites a process analogous to that of claim 1 but implemented in a system. ('947 Patent, Col. 14:66-67; Col. 15:1-5, 59-67; and Col. 16:1-2).

This Court must invalidate these claims because they do not meet the "machine-or-transformation" test set forth in *Bilski*. First, neither claim recites the transformation of "an article" into another "thing" or "state." A review of the language in those claims reveals that the terms "modifying said database" are the only terms that can possibly be used by Plaintiff in arguing that the data in the database is "transformed" such as to satisfy *Bilski*. But because such modification does not involve the transformation of any physical object or substance, or an electronic signal representative of any physical object or substance, the claims fail to meet the "transformation" prong of the *Bilski* test. *Id.* at 964. Second, no claim recites a particular machine or apparatus that limits the process claimed in any meaningful way. Therefore, the processes claimed in the '947 Patent cannot be tied to such particular machine or apparatus in a manner that would satisfy *Bilski*.

Because no claim in the '947 Patent satisfies the "machine or transformation" test of *Bilski*, they do not constitute patent eligible subject matter under 35 U.S.C. § 101. Accordingly, the '947 Patent must be invalidated as a matter of law.

a.     **The claims of the '947 Patent are not "tied to a particular machine or apparatus."**

Claim 1 fails to meet the "machine" prong of the *Bilski* test because none of the physical elements it recites, a database server and a client device, constitute a particular machine or apparatus. To satisfy the "machine" prong of the *Bilski* test, the use of a machine "must impose meaningful limits on the claim's cope to impart patent eligibility." *Bilski*, 545 F.3d at 961.

In *Every Penny Counts, Inc. v. Bank of America Corp.*, No. 07-042 (M.D. Fla. May 27, 2009)(attached hereto as Exhibit "D"), the Middle District, guided by *Bilski*, recently invalidated a claim directed to a "system" and reciting "entry means," "identification entry means," "a network," and "computing means having data concerning the payor including an excess determinant established by the payor for the accounts." *See* Exhibit "D," at 4, 6. Based on the Supreme Court decision in *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972), the Middle District held that while the claim at issue was directed to a system, it was not a "machine" but rather a "process," and thus *Bilski* was exactly on point, as the patented claim at issue in *Bilski* was

14

Case No. 09-20965-CIV-MARTINEZ

directed to a process. *Id. at* 4-5.  The Court then reasoned that the physical elements in the patented process did not "impose any limit" on the process itself. *Id.* at 5.  Like the claim at issue in *Every Penny Counts*, claims 1 and 19 in the '947 Patent recite general computing devices that add nothing to the active steps recited therein.

The Specification of the '947 Patent uses the term "database server" interchangeably with "transaction server." ('947 Patent, Col. 2:5-6, 15-17).  The Specification clearly discloses that this transaction server is nothing more than a "general purpose processor." ('947 Patent, Col. 3:18-20).  Thus there is simply nothing about a general purpose processor, recited in claim 1 as a database server and in claim 19 as a transaction server, that would impart any meaningful limit on the scope of the claims. *See Ex Parte Cornea-Hasegan,* 89 U.S.P.Q.2d 1557, *5 (Bd.Pat.App. & Interf. 2009)(recitation of "processor" which "is nothing more than a general purpose computer that has been programmed in an unspecified manner" incapable of overcoming requirement of being tied to a particular machine); *In re Ex Parte Halligan,* 89 U.S.P.Q.2d 1355 (Bd.Pat.App. & Interf.)(reaching the same conclusion for phrase "programmed computer").

Claims 1 also recites the term "client device." The Specification of the '947 Patent does not clearly define the "client device" of claim 1.  Dependent claims 4 and 7 respectively define "client device" as including a "broker station" and a "lender station." Like the transaction server, the "broker station" and the "lender station" are defined by the Specification as a "general purpose processor[s]" with nothing particular about them. ('947 Patent, Col. 6:4-7 and Col. 7:4-7).  Because the terms "transaction server," "database server," and "client device" all refer to a general purpose machine, they do not impose meaningful limits on the scope of the claims, and therefore, do not meet the "machine" prong of the *Bilski* test for patent eligibility.  *Bilski*, 545 F.3d at 961.

The remaining dependent claims suffer from the same deficiencies pointed out above with respect to claim 1.  In addition to the "transaction server," "database server," and "client device" elements included in the dependent claims by reference to the independent claims, the dependent claims only recite two additional physical elements: a broker station and a lender station.  As discussed above, these are simply general purpose processors that do not meet the "machine" prong of the "machine-or-transformation" test set forth in *Bilski* because they do not add any meaningful limitations to the claims.

15

Case No. 09-20965-CIV-MARTINEZ

In addition to failing the "machine" prong of the *Bilski* test, no claim in the '947 Patent involves the transformation of any physical object or substance, or an electronic signal representative of any physical object or substance. Therefore, the claims in the '947 Patent fail to meet the "transformation" prong of the *Bilski* test as well.

**b.    The claims of the '947 Patent do not "transform[] a particular article into a different state or thing."**

A claimed process is patent-eligible under 35 U.S.C. §101 if it "transforms a particular article into a different state or thing." *Bilski*, 454 F.3d at 962. Data, while not constituting a physical object, may be considered an "article" under *Bilski* if it clearly represents a physical and tangible object. *Id.* at 962-963. The transformation of that particular type of data into a visual depiction may satisfy the "transformation" prong of the *Bilski* test. *Id.* at 963. But such is not the case here because (1) the loan information stored in the database claimed in the '947 Patent does not represent a physical and tangible object; and even if it did, (2) the claims requirement for modification of data does not amount to transformation of that data into a different state or thing.

Credit card information stored in a computer cannot be said to represent a physical and tangible object. *Cybersource Corp. v. Retail Decisions, Inc.*, 2009 WL 815448, *4 (N.D. Cal.). Specifically, it cannot be said to constitute a representation of a physical credit card such as to meet the "article" requirement of the "transformation" prong of the *Bilski* test. *Id.* Any argument by Plaintiff that the loan application data recited in the claims represents the physical paper loan applications should therefore be rejected by this Court, especially considering that one of the goals of the '947 Patent was to do away with paper loan applications. '947 Patent, Col. 1:9-67.

Even if the loan application data were considered an "article," there is no transformation of that data into a different "state" or "thing." Transformations of "public or private legal obligations" do not meet the transformation test. *Bilski*, 454 F.3d at 963. Therefore, manipulation or modification of loan application data fails to satisfy the transformation prong of the *Bilski* test. *See Cybersource,* 2009 WL 815448, at *4.

Because no claim in the '947 Patent satisfies the "machine or transformation" test of *Bilski*, they do not constitute patent eligible subject matter under 35 U.S.C. § 101. The '947 must be invalidated.

16

Case No. 09-20965-CIV-MARTINEZ

> **c.      The USPTO has already done some of the Court's work by applying *Bilski* and invalidating Plaintiff's related patent application containing with same specification as the '947 Patent.**

Plaintiff is undoubtedly aware that *Bilski* renders the '947 Patent invalid.  The USPTO determined that a related patent application owned by Plaintiff, which depends from and has the same specification as the '947 Patent, does not contain patentable subject matter under 35 U.S.C. §101 and is therefore invalid.  Thus, the USPTO has already done much of the work necessary to support this Court's determination that under *Bilski,* the '947 Patent is invalid.

Plaintiff filed a related patent application with the USPTO, which was assigned application no. 11/248,018 (the "'018 Application").  *See* Exhibit "C."[10]  The '018 Application is a continuation application which not only shares the same specification at the '947 Patent but also claims a prior date identical to the '947 Patent.  The '018 Application also contains similar claims to those appearing in the '947 Patent.  However, in June, 2009, *after* the Federal Circuit's decision in *In re Bilski,* the USPTO issued a final rejection in connection with the '018 Application, determining that the claims of the '018 Application failed the "machine-or-transformation" test, and therefore, did not constitute patentable subject matter under 35 U.S.C. §101.[11] *See* Exhibit "A."

The USPTO's final rejection of the '018 Application lays out precisely what this Court needs in order to invalidate the '947 Patent under *Bilski.*  Since the USPTO has now done the work of determining that the inventions detailed in the same specification as in the '947 Patent do not constitute patentable subject matter, this Court need only review the claims of the '947 Patent and determine, as a matter of law, that they fail to satisfy the "machine-or-transformation" test.

Accordingly, this Court must invalidate the '947 Patent under *Bilski.*

---

[10] As with the request in footnote 8 above, Defendants respectfully request that this Court take judicial notice of the USPTO's file for patent application no. 11/248,018, a copy of which is attached as Exhibit "C."  Exhibit "A" begins at page 17 of that file.

[11] The claims of the '018 Application were also rejected by *inter alia* additional prior art that was not cited against '947 Patent.  Nonetheless, this Court need not concern itself with the issue of prior art, as it may invalidate the '947 Patent based upon *Bilski.*

Case No. 09-20965-CIV-MARTINEZ

**B.      Alternatively, This Court Should Convert This Motion And Enter Summary Judgment In Favor of Defendants.**

**1.      The Summary Judgment Standard.**

Summary judgment is regarded as "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Accordingly, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. at 322; FED.R.CIV.P. 56(c).

When considering a motion for summary judgment, courts view all evidence in the light most favorable to the party opposing the motion. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. *See Harrison v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

However, "[a] genuine issue of material fact does not exist until there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Likewise, the existence of some factual disputes between litigants will not defeat an otherwise properly supported summary judgment motion. *Id*. at 248.

Additionally, although the movant "bears the initial responsibility of informing the district court of the basis for its motion," the U.S. Supreme Court has expressly recognized that the movant is not required to support its motion with any information negating its opponent's claims. *Celotex Corp.*, 477 U.S. at 323.

As discussed above, patent invalidity under 35 U.S.C. § 101 is purely an issue of law, and no issue of fact can be raised by Plaintiff to avoid a ruling on the invalidity issue.  Here, when the patent in suit is considered within the context of *In re Bilski*, 545 F.3d 943 (Fed.Cir. 2008),

18

Case No. 09-20965-CIV-MARTINEZ

the Court will conclude that the patent in suit is invalid, and therefore unenforceable, as a matter of law.

To prove infringement, Plaintiff is required to establish that Defendants exert "direction or control" over borrowers, as explained above. The single fact that disposes of the issue – and of the entire suit – is that neither Defendant has any type of contractual relationship with borrowers such that (1) borrowers are bound to access the Defendants' servers, (2) borrowers are considered agents of either Defendant, or (3) borrowers access Defendants' servers within the scope of their agency relationship with Defendants. Simply put, there is no issue of material fact because there is no existing contractual obligation that would force borrowers to practice any steps of the patented claims.

### 2.    Statement of Undisputed Facts for Summary Judgment.

Pursuant to Local Rule 7.5, the following facts are undisputed:

1.    The claims in the '947 Patent are not tied to any particular machine or apparatus other than a general purpose computing device.

2.    The claims in the '947 Patent do not transform a specific article into a different thing or state.

3.    The claims of the '947 Patent are not capable of being infringed by either one of the Defendants alone.

### 3.    Defendants Are Entitled To Summary Judgment.

Based upon the facts above, and the extensive legal argument above, Defendants are entitled to summary judgment on the issues of non-infringement and invalidity.

Plaintiff's claims of infringement against Defendants fail because the claims of the '947 Patent do not satisfy the requirements of the "single actor" rule. The claims and specification of the '947 Patent, and the prosecution history for the '947 Patent, establish that a borrower (or borrowers) must be present. Indeed, if no borrower (i.e., loan originator) ever made a request to search the loan database, the '947 Patent would never be infringed. ('947 Patent, Col. 15:1-5).

Plaintiff's claims of infringement against Defendants also fail because, as discussed at length above, the claims of the '947 Patent fail to satisfy the Federal Circuit's "machine or

Case No. 09-20965-CIV-MARTINEZ

transformation" test.  As a result, the claims of the '947 Patent do not constitute patentable subject matter under 35 U.S.C. §101, and therefore, the '947 Patent is invalid as a matter of law.

IV.     **CONCLUSION.**

Based upon the foregoing, Defendants respectfully request that this Court dismiss this action with prejudice.  In the alternative, Defendants respectfully request that this Court convert this motion to a motion for summary judgment and enter summary judgment in favor of Defendants on all claims.  Finally, Defendants respectfully submit that it would be in the interests of justice and promote judicial economy to address the instant motion and either grant Defendants' Motion to Dismiss under *Bilski* and the other grounds cited herein or stay this action pending the U.S. Supreme Court's ruling on that case.

Respectfully submitted,

FELDMAN GALE, P.A.
Counsel for Defendants
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  305-358-5001
Telefax:  305-358-3309

s/ James A. Gale

By:_____
    James A. Gale / Fla. Bar No. 371726
    E-Mail:  jgale@FeldmanGale.com
    Samuel A. Lewis / Fla. Bar No. 55360
    E-Mail:  slewis@FeldmanGale.com
    Rafael A. Perez-Piniero / Fla. Bar No. 543101
    E-Mail:  rperez@FeldmanGale.com

Case No. 09-20965-CIV-MARTINEZ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27th, 2009, I electronically filed the foregoing document with the Clerk of the Court CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

s/ James A. Gale

_____

## SERVICE LIST

*IMX, Inc. d/b/a Global Netoptex, Inc. v. E-Loan, Inc., et al.*
Case No. 09-20965-CIV-MARTINEZ

Edward M. Mullins
Chalon T. Allen
Astigarraga Davis Mullins & Grossman
701 Brickell Avenue, 16th Floor
Miami, Florida 33131-2845

M. Elizabeth Day
William G. Goldman
Erik R. Fuehrer
DLA Piper LLP (US)
2000 University Ave.
East Palo Alto, California 94303