UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IMX, INC. d/b/a GLOBAL NETOPTEX,                    CASE NO. 09-20965-CIV-MARTINEZ
INC.,                                              Magistrate Judge Brown
                Plaintiff,

vs.

E-LOAN, INC. and BANCO POPULAR
NORTH AMERICA, INC.,

                Defendants.
_____/

**E-LOAN'S MOTION TO STRIKE IMPROPER MATERIALS FILED
IN CONNECTION WITH IMX'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant, E-Loan, Inc. ("E-Loan"), pursuant to Fed.R.Civ.P. 12(f), 56(c)(2), 56(c)(4),

56(e) and 56(h) and Local Rule 7.1, respectfully moves this Court for the entry of an Order striking

the following materials that the Plaintiff, IMX, Inc. ("IMX") submitted in an attempt to support its

Renewed Motion for Summary Judgment and/or in Opposition to E-Loan's Renewed Motion for

Summary Judgment:

    a)        Portions of the Declaration of Dr. Sadashiv Adiga should be stricken because:

          (i)        They constitute inadmissible material under Fed.R.Evid. 601 and 602 (in

                        that the witness makes statements as to which he has no personal knowledge

                        regarding whether another person allegedly and actually signed a

                        document);

          (ii)        They constitute inadmissible hearsay under Fed.R.Evid. 802 (in that the

                        witness makes statements regarding another person's intent when those

                        persons allegedly signed a document); and

Case No. 09-20965-CIV-MARTINEZ

(iii)   The witness clearly lacks personal knowledge with respect to the statements that he makes, as required under Fed.R.Evid. 602 and Fed.R.Civ.P. 56(c) (statements indicating that IMX existed as an entity in 1995 when records from the Delaware Secretary of State establish that IMX did not come into existence until late 1996);

b)   Purported financial statements, Exhibits AA [DE#404-3] and BB [DE#404-4], filed with IMX's Reply Memorandum [DE#404], should be stricken because they constitute:

(i)   Inadmissible hearsay under Fed.R.Evid. 802 (because the documents were created by third parties who did not attest to their authenticity);

(ii)   Inadmissible hearsay within hearsay under Fed.R.Evid. 805 (to the extent that the accountant(s) who prepared the statements relied upon hearsay statements and information from IMX, the repeating of those statements in the inadmissible financial statements constitutes double hearsay); and

(iii)   An inadmissible summary under Fed.R.Evid. 1006 (where a summary contains inadmissible hearsay, the summary is inadmissible); and

c)   A document entitled "Action By Sole Director" marked as Exhibit CC [DE#404-5] and filed with IMX's Reply Memorandum [DE#404], which constitutes inadmissible hearsay because:

(i)   IMX cannot authenticate the document's attachments at trial as required under Fed.R.Evid. 901 as a predicate for admissibility since the form agreements are unsigned;

2

(ii)    The completed and executed copies of the attachments—the actual agreements necessary to effectuate the purported action allegedly contemplated by the director (assuming those even exist)—would be necessary under the doctrine of completeness, Fed.R.Evid. 106, and best evidence rule, Fed.R.Evid. 1001 and 1002, to establish that any action actually took place; and

(iii)    The completed and executed copies of the attachments sought to be relied upon in the "Action By Sole Director" as proof that the transaction took place were <u>never</u> produced in the course of discovery in this action, and have still never been produced.

In support of this Motion, E-Loan respectfully refers the Court to the Memorandum of Law below.

## MEMORANDUM OF LAW

## I.    INTRODUCTION.

In an effort to avoid summary judgment in favor of E-Loan on the issue of standing and ownership of the patent in suit, IMX resorts to the presentation of incomplete documentation, documents constituting inadmissible hearsay and a declaration containing both inadmissible hearsay and statements from a declarant who clearly has no personal knowledge.  Since these materials are cannot properly be considered on summary judgment as a matter of law, E-Loan respectfully requests that the Court strike the improper and inadmissible statements and documents.

3

Case No. 09-20965-CIV-MARTINEZ

II.     **IDENTIFICATION OF THE MATERIALS THAT MAY NOT BE PROPERLY CONSIDERED ON SUMMARY JUDGMENT.**

      A.     **The Declaration of Dr. Sadashiv Adiga.**

The first patent assignment presented to this Court by IMX is a document dated May 21, 1998 (the "First Assignment").  That First Assignment identifies the non-existent entity, "IMX MORTGAGE EXCHANGE, a California corporation" as the assignee.  No party to this litigation disputes the fact that no such company has ever existed; rather, IMX claims that the language in the First Assignment is a mere "technical error," while E-Loan asserts that because no such company admittedly ever existed, that either the First Assignment is void as a matter of law, or that IMX would have to bring a claim to reform the First Assignment to properly and clearly confirm that IMX, the Plaintiff in this action, is the appropriate owner of the patent in suit with standing to bring the instant suit.  Moreover, such a reformation action would necessarily require that IMX join all of the assignors or their heirs as parties to that action in order to obtain clear "title" or ownership rights.

Instead of proceeding as the law requires, however, IMX instead seeks to rely upon an attempted "short-cut" to try to accomplish the same result—namely, inadmissible information contained within the Declaration of Dr. Sadashiv Adiga (the "Adiga Declaration") filed in support of its Renewed Motion for Summary Judgment (as Exhibit "T," [DE#386-20]).  IMX also seeks to rely upon the Adiga Declaration in its Opposition to E-Loan's Renewed Motion for Summary

4

Case No. 09-20965-CIV-MARTINEZ

Judgment.[1]   However, the Adiga Declaration contains inadmissible hearsay and statements for

which Dr. Adiga clearly has no personal knowledge.

At the outset, it should be noted that nowhere in the Adiga Declaration does Dr. Adiga

even remotely suggest that he has first-hand, personal knowledge of any of the statements that he

makes.  In paragraph 5 of the Adiga Declaration, he declares:

> On May 21, 1998, Mr. Fraser, Mr. Payankannur and I assigned our interest in
> the '947 patent to IMX Mortgage Exchange.  At the time of the assignment,
> IMX Mortgage Exchange was the name IMX was using to conduct business
> in California.

*See* Adiga Declaration [DE#386-20], ¶5.  While Dr. Adiga is able to testify as to what he did, and

what his intention was, he cannot attest to what the other two individuals did, or what their

intention was, even if he actually saw them execute the document (notwithstanding that there is no

evidence that he saw them sign the document in question).  Dr. Adiga does not testify that he was

present and saw Messrs. Payankannur and Fraser sign the First Assignment.  Thus, there is no basis

for him to make that statement under Rules 601 and 602.  Even if he was present and did have

knowledge that Messrs. Payankannur and Fraser actually signed the First Assignment, Dr. Adiga is

simply incapable of testifying that Messrs. Fraser and Payankannur ***intended to assign*** their rights

to the Plaintiff, IMX, when they allegedly signed the First Assignment.  Even if Dr. Adiga and

Mr. Fraser had never worked for Industrywide Mortgage Exchange, LLC, a California limited

liability company ("Industrywide Mortgage Exchange") that did business at the same address as

IMX—and the evidence in the record establishes that they did, in fact, work for Industrywide

---

[1] In its Opposition, IMX attempts to mask its reliance upon the Adiga Declaration. Instead of directly citing to the Adiga Declaration, IMX instead cites to portions of its Statement of Material Facts, which in turn rely upon and cite to the Adiga Declaration.

5

Mortgage Exchange—Dr. Adiga's testimony would still constitute inadmissible hearsay which is not properly considered on summary judgment.

The defects in the Adiga Declaration do not end with its inclusion of inadmissible hearsay. In addition to the inadmissible hearsay, the Adiga Declaration also contains statements for which he clearly has no personal knowledge.  In paragraph 3 of the Adiga Declaration, he declares:

> I worked with both Mr. Fraser and Mr. Payankannur at IMX, Inc. ("IMX").  I worked with IMX from 1995 to 2000.  Mr. Fraser was the founder of IMX.

*Id.*, ¶3.  However, as IMX's own documents submitted to the Court establish, IMX did not come into existence until November 6, 1996. *See* [DE#386-5] (Copy of Certificate of Incorporation for IMX filed with the Delaware Secretary of State).[2]  Thus, the statement that Dr. Adiga worked with IMX from 1995 is a legal impossibility, highlighting his lack of personal knowledge as required under Fed.R.Evid. 602.  Considering the purpose for which the Adiga Declaration was offered—to avoid the entry of summary judgment in favor of E-Loan on the issue of standing—it becomes apparent that the Adiga Declaration was created in an effort to avoid the true facts that exist and thwart this Court's entry of summary judgment in favor of E-Loan.

**B.      Financial Statements Prepared By Third-Parties.**

In a further effort to avoid summary judgment against it, IMX also advanced the argument that it was the only entity doing business at the 111 Deerwood Road address appearing in the First Assignment, and therefore, it was the only entity to which the assignors could have possibly intended to assign their patent rights.  In addition to the fact that this argument highlights that IMX actually seeks to have this Court re-interpret and reform the First Assignment without actually

---

[2] This Court may take judicial notice of the documents or records from the Delaware Secretary of State. Fed.R.Evid. 902.

6

Case No. 09-20965-CIV-MARTINEZ

bringing an action for reformation (much less joining the parties that would be necessary for such an action), the argument was also based upon the false premise that IMX was the *only* entity to do business at the 111 Deerwood Road address.

After E-Loan presented evidence to this Court that it believes totally negates IMX's "sole entity" theory[3], IMX no longer referenced the legally-impossible statements in the Adiga Declaration.  Instead, for the first time, in its Reply in support of its Renewed Motion for Summary Judgment, IMX now suggests to this Court that it was the "successor" to Industrywide Mortgage Exchange, LLC ("Industrywide Mortgage Exchange").  However, the documents that IMX seeks to rely upon to support that proposition—specifically, the financial statements filed as Exhibits AA [DE#404-3] and BB [DE#404-4] (collectively, the "Financial Statements")—constitute inadmissible hearsay, which may not be considered on summary judgment.

In fact, the Financial Statements present a double-hearsay problem.  First, IMX has not presented the declaration of any person who allegedly prepared the Financial Statements, thereby causing those documents to be incapable of authentication as required by Fed.R.Evid. 901.  However, even if IMX were permitted to call the accountant or accountants who prepared the Financial Statements, it would not avoid the second hearsay problem, namely that the accountants could not testify regarding information provided by IMX regarding its supposed relationship with

---

[3] E-Loan debunked the "sole entity" theory by pointing out that another entity, Industrywide Mortgage Exchange, a California limited liability company with a name strikingly similar to the name of the assignee in the First Assignment, also did business at the same 111 Deerwood Road Address.  E-Loan also demonstrated that Dr. Adiga signed an agreement with Industrywide Mortgage Exchange in 1997. And contrary to IMX's unfounded assertion, the Certificate of Cancellation filed with the California Secretary of State for that entity was not filed until <u>March, 1999</u>, *see* Exhibit "A" (Certified copy of California Secretary of State record)—*after* the First Assignment was executed.

7

Case No. 09-20965-CIV-MARTINEZ

Industrywide, without that testimony constituting inadmissible hearsay.   Thus, the Financial Statements may not be considered under Rule 56.

### C.   The Action By Sole Director.

In addition to relying upon the inadmissible Financial Statements to establish that IMX is the successor to Industrywide Mortgage Exchange, IMX also seeks to rely upon a document entitled "Action By Sole Director," which IMX filed as Exhibit CC [DE#404-5] (the "Action By Sole Director").   However, this document may not be properly considered under Rule 56 either, and must be stricken.

First, it is apparent from the face of the document itself that it contemplates a number of agreements being executed by a variety of people.   Indeed, the Action By Sole Director even attaches copies of the form agreements that were required to be executed.   However, there is absolutely no evidence in the record—and IMX has not produced any of the executed documents during discovery—to establish that any of these supporting agreements were completed and executed, much less that the transaction contemplated in the Action actually took place.   Since IMX did not produce during discovery the completed, executed agreements necessary to establish that any action took place, the Action By Sole Director is incomplete.   Thus, the unsigned form agreements attached to the Action By Sole Director do not constitute evidence of anything, much less evidence that would be properly considered under Rule 56.

Second, and perhaps more importantly, the Action By Sole Director is not an appropriate vehicle for proving IMX's claim that it is the legal "successor" to Industrywide Mortgage

8

Case No. 09-20965-CIV-MARTINEZ

Exchange.[4]  Indeed, if IMX is truly the legal successor to Industrywide Mortgage Exchange, then it would be required—by law—to have executed other statutorily-required documents to confirm its "successor" status. Such documents would necessarily include the documents filed with the California Secretary of State and/or Delaware Secretary of State.  For example, Delaware corporations are required to file and have merger documents approved when a Delaware corporation acquires a limited liability company, as IMX has falsely implied. *See, e.g.,* DEL. CODE. ANN. tit. 8, Section 264(c) (1997) (requiring the filing of either merger documents or a certificate of merger).  Moreover, while California does not require the filing of the merger papers where the surviving entity is a foreign corporation, California nevertheless does require the filing of, at the least, a certificate of merger with the California Secretary of State. *See, e.g.,* Cal. Corp. Code. §17550(b)(2); Cal. Corp. Code §17555(d).  Thus, if IMX truly acquired Industrywide Mortgage Exchange and became its legal "successor," it would have been required to file merger documents in both California and Delaware.

Simply put, the Action by Sole Director is not the type of evidence necessary to support IMX's claim or implication that Industrywide Mortgage Exchange was acquired by or merged into the Plaintiff in this action, IMX.  Industrywide Mortgage Exchange never filed a Certificate of Merger with the California Secretary of State as would be required to be done in an acquisition that would result in a successor in interest. *See, e.g.,* Exhibit "B" (California Secretary of State Certificate of Merger form and related information).  Nor did IMX file one in Delaware. *See, e.g.,* Exhibit "C" (Certified copies of IMX's filings with the Delaware Secretary of State).  Instead of

---

[4] While IMX does not actually represent to this Court that IMX, Inc. is the legally cognizable "successor in interest" to Industrywide Mortgage Exchange, it implies as much. *See* IMX's Reply [DE#404], at 6 (Industrywide Mortgage Exchange "was simply IMX, Inc.'s *predecessor . . . .*").

Case No. 09-20965-CIV-MARTINEZ

filing a Certificate of Merger in either Delaware or California, as would otherwise be required in

an acquisition or merger, Industrywide Mortgage Exchange filed a Certificate of Cancellation on

March 2, 1999 that caused that entity to cease to exist. *See* Exhibit "A" (Certificate of Cancellation

filed with California Secretary of State).   Absent any other documents establishing that

Industrywide Mortgage Exchange conveyed its property rights to IMX,[5] there is simply no

intellectually honest basis upon which IMX may claim that it is a legally-cognizable successor-in-

interest to Industrywide Mortgage Exchange and the rights that it may have enjoyed.[6]

## III.   ARGUMENT.

### A.   The Court Should Strike The Inadmissible Statements In The Adiga Declaration.

"The general rule is that inadmissible hearsay 'cannot be considered on a motion for

summary judgment.'" *Macuba v. DeBoer,* 193 F.3d 1316, 1322 (11th Cir.1999) (*quoting Garside v.*

*Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)).  Indeed, the Federal Rules expressly require that

---

[5] Even if IMX could prove that it acquired the shares of Industrywide Mortgage Exchange—which it cannot—merely acquiring the shares would not have been sufficient to convey ownership rights of any patent rights from Industrywide Mortgage Exchange to IMX, absent a separate instrument conveying those rights. "Once the acquisition has been made the purchasing corporation thereafter has the status of a stockholder of the corporation whose shares it has purchased and nothing more. In other words, the purchasing corporation is not the owner of the assets of the other corporation, but is merely a stockholder with all the incidents of such. Nor do the corporate identities merge by reason solely of the purchase by one of all of the other's stock." *Orzeck v. Englehart*, 195 A.2d 375, 377 (Del. 1963).

[6] Even assuming *arguendo* that IMX actually has such a direct assignment from Industrywide Mortgage Exchange to IMX, and has merely withheld it during the course of the litigation, that still does not answer the more fundamental question of whether Industrywide Mortgage Exchange, LLC acquired rights to the '947 Patent.  Indeed, neither IMX nor Industrywide Mortgage Exchange, LLC are specifically named or otherwise identified in the First Assignment.  Moreover, if IMX actually has a direct assignment of the patent in suit from Industrywide Mortgage Exchange to IMX, and has merely withheld it during the course of this litigation, it calls into question IMX's counsel's conduct and reasoning for creating the *Nunc Pro Tunc* Patent Assignment created shortly before the filing of this action.

affidavits or declarations submitted in support of a motion for summary judgment be based upon personal knowledge and "set out facts that would be admissible in evidence . . . ." *See* Fed.R.Civ.P. 56(c)(4).  To the extent an affidavit or declaration contains inadmissible statements, "[t]he court may strike inadmissible portions of an affidavit and consider the rest." *Underwriters at Lloyds v. Fedex Freight System, Inc.,* 2008 WL 2901049, *2 (M.D. Fla.); *see also Story v. Sunshine Foliage World, Inc.,* 120 F.Supp.2d 1027, 1030 (M.D. Fla. 2000)("An affidavit submitted in connection with a summary judgment motion is subject to strike if it does not measure up to the standards of Rule 56(e) of the Federal Rules of Civil Procedure.").

There are three aspects of the Adiga Declaration which may be properly stricken for failure to comply with Rule 56.  First, there is no foundation for the claim that Messrs. Payankannur and Fraser actually signed the First Assignment.  Without a statement in the Adiga Declaration that he has first-hand knowledge of the signing of the document by Messrs. Payankannur and Fraser (e.g., that he actually saw them sign it)—which is in fact absent from the Adiga Declaration—then Dr. Adiga cannot state that Messrs. Payankannur and Fraser actually signed the First Assignment without such a statement being inadmissible hearsay.  The lack of foundation under Fed.R.Evid. 602 and failure to set forth that he has first-hand knowledge renders the statements in the Adiga Declaration inadmissible hearsay which may not be considered under Fed.R.Civ.P. 56(c).

Second, the attempt to establish Messrs. Payankannur's and Fraser's intent in connection with the First Assignment in paragraph 5 of the Adiga Declaration constitutes inadmissible hearsay. *See* Fed.R.Civ.P. 801 (definition of hearsay) and 802 (hearsay rule); *see generally Jacox v. Cincinnati Public Schools,* 2007 WL 2156650, at *6 (S.D. Ohio)(affidavit insufficient where it contained an affiant's subjective assessments of another's intent).

11

Case No. 09-20965-CIV-MARTINEZ

Third, it is apparent that Dr. Adiga is without personal knowledge as to the facts stated in the Adiga Declaration, as required by Fed.R.Evid. 602 and Fed.R.Civ.P. 56(c). Indeed, in paragraph 3 of the Adiga Declaration, Dr. Adiga states in no uncertain terms that he "worked with IMX from 1995 . . . ." Yet, that statement is contradicted by the certified copy of IMX's Certificate of Incorporation that IMX submitted to the Court at the same time it submitted the Adiga Declaration, which establishes conclusively that IMX was formed in late *1996*.

Since all of the statements in the Adiga Declaration, and specifically paragraphs 3 and 5, are not based upon personal knowledge as required by Fed.R.Evid. 602 and constitute hearsay under Fed.R.Evid. 802, the statements are properly stricken.

### B.      The Non-Rule 56 Documents Should Be Stricken.

Consistent with the general rule in this Circuit, the Financial Statements (Exhibits AA and BB) and Action By Sole Director (Exhibit CC) should also be stricken as they constitute inadmissible hearsay and double hearsay. Indeed, unsworn documents not based upon personal knowledge may not be considered on summary judgment. *Castillo v. Cessna Aircraft Co.,* 712 F.Supp.2d 1306, 1309-10 (S.D. Fla. 2010)(*citing Burnett v. Stagner Hotel Courts, Inc.,* 821 F.Supp. 678, 683 (N.D. Ga. 1993)("In order for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affidavit must be a person through whom the exhibits could be admitted into evidence.")).

### 1.      The Financial Statements Should Be Stricken.

The Financial Statements constitute inadmissible hearsay. *See, e.g., Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1260 (9th Cir. 1984)("It follows that the audit reports are based in

12

part on inadmissible hearsay.  And it is clear that a summary of both inadmissible and admissible hearsay should not be admitted under Rule 1006."); *Norcott v. U.S.,* 65 F.2d 913, 916 (7th Cir. 1933)(audit properly excluded as hearsay evidence where the "documents were not identified by their respective authors, . . . the authors were not available for cross-examination, and no one testified as the accuracy of the documents.").  Since IMX did not create the Financial Statements, it cannot authenticate them. *See* Fed.R.Evid. 901; *see also California Pacific Bank v. Small Business Administration,* 557 F.2d 218 (9th Cir. 1977)(audit report submitted without an accompanying affidavit attesting to its validity "meets none of the authentication requirements of Fed.R.Evid. 901, 902 . . . and should have been stricken" instead of being considered on summary judgment). Moreover, IMX submitted the Financial Statements without an accompanying declaration by the person who prepared the Financial Statements attesting to their validity, and as such, the documents have not been authenticated (which is a pre-requisite to admissibility).

The evidentiary problems relating to the Financial Statements are not limited to the failure of authentication.  The Financial Statements also contain hearsay and double-hearsay, namely statements made by the accountant who prepared the documents based upon statements allegedly made by someone at IMX regarding, *inter alia,* the alleged relationship between IMX and Industrywide Mortgage Exchange.  However, even assuming *arguendo* that IMX can establish the admissibility of the underlying evidence, "[h]earsay within hearsay subject to an exception is not admissible." *United Technologies Corporation v. Mazer,* 556 F.3d 1260, 1278 (11th Cir. 2009). Thus, the Financial Statements are inadmissible and do not constitute evidence which may be considered under Rule 56.

Case No. 09-20965-CIV-MARTINEZ

**2.     The Action By Sole Director Should Be Stricken.**

Similarly, the Action By Sole Director (Exhibit CC) is not proper Rule 56 evidence.  Since the Action By Sole Director is being offered to prove that IMX is the purported successor in interest to Industrywide Mortgage Exchange, IMX necessarily must demonstrate: (1) that the transaction contemplated by the Action actually took place; (2) that it is the *legal* successor-in-interest; *and* (3) that Industrywide Mortgage Exchange's property rights were transferred to IMX. However, neither the various agreements necessary to carry out the transaction contemplated by the Action By Sole Director, nor any other instrument purporting to convey Industrywide Mortgage Exchange's property interests (if any) were produced in discovery, and there is no evidence in the record that any of these materials exist.

In the absence of the completed and executed agreements, IMX is forced to rely upon the unsigned form agreements attached to the Action By Sole Director.  Thus, the only documents relating to the alleged transaction are unsigned form agreements, which are not admissible. *LC Associates v. Pensignorkay, Inc.,* 1996 WL 165510, *2 (E.D. Pa.)("the unsigned draft of the 'Agreement,' being neither properly identified nor authenticated, is inadmissible under Federal Rule of Evidence 901."); *see also Linear Technology Corp. v. Micrel, Inc.,* 275 F.3d 1040, 1056 (Fed. Cir. 2002)(unsigned letters were incapable of being authenticated and thus, district court was well within its direction when it excluded the letters under Fed.R.Evid. 901).  The unsigned form agreements also fail to comply with the requirements of Fed.R.Evid. 1001 and 1002.

Similarly, because the Action By Sole Director contemplates the completion and execution of other agreements, the Action By Sole Director, standing alone, is insufficient to satisfy the doctrine of completeness. *See* Fed.R.Evid. 106 ("When a writing or recorded statement or part

14

thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.").  Without the various agreements required by Action By Sole Director, there is no way for the Court to determine whether the transaction contemplated by that document ever took place.  Standing alone in a vacuum, the Action By Sole Director is therefore incomplete and not able to establish that IMX acquired the shares of Industrywide Mortgage Exchange.

Likewise, simply acquiring the shares of stock of an entity is insufficient to establish ownership of the entity's property rights absent a separate instrument conveying those rights. *Orzeck v. Englehart,* 195 A.2d 375, 377 (Del. 1963).  Since the Action By Sole Director does not make reference to such an instrument, it is also incomplete to the extent that IMX seeks to rely upon the Action By Sole Director to establish that it acquired any rights (specifically, the patent ownership rights at issue) that Industrywide Mortgage Exchange may have had.  Similarly, if IMX contends that the Action By Sole Director establishes that it is the legal "successor-in-interest" to Industrywide Mortgage Exchange, then under both California law and Delaware law (as well as the completeness doctrine, Fed.R.Evid. 106), IMX must present the merger papers it was required by law to file in Delaware and/or California assuming such a merger ever occurred. *See, e.g.,* DEL. CODE. ANN. tit. 8, Section 264(c) (1997) (requiring the filing of either merger documents or a certificate of merger); Cal. Corp. Code. §17550(b)(2); Cal. Corp. Code §17555(d).  Having already reviewed the corporate filings made in both California and Delaware, E-Loan can state with confidence that IMX is unable to file such papers with this Court because they were never filed with either of those states as required by law (indeed, E-Loan has attached certified copies of

15

Case No. 09-20965-CIV-MARTINEZ

IMX's records from the Delaware Secretary of State as Exhibit "C"). Nor has IMX attempted to present any of those documents to the Court, notwithstanding that IMX bears the burden of establishing ownership and standing.

Thus, the Action By Sole Director and the unsigned form agreements attached to it is not Rule 56 evidence and should be stricken.

## IV. CONCLUSION.

Based upon the foregoing, E-Loan respectfully requests that this Court enter an Order striking the foregoing portions of the Adiga Declaration, the Financial Statements submitted as Exhibits AA and BB, and the Action By Sole Director submitted as Exhibit CC.

Respectfully submitted,

FELDMAN GALE, P.A.
Counsel for E-Loan
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  305-358-5001
Telefax:  305-358-3309

s/ Samuel A. Lewis
By:_____
    James A. Gale / Fla. Bar No. 371726
    E-Mail:  jgale@FeldmanGale.com
    Samuel A. Lewis / Fla. Bar No. 55360
    E-Mail:  slewis@FeldmanGale.com
    Rafael A. Perez-Pineiro / Fla. Bar No. 543101
    E-Mail:  rperez@FeldmanGale.com
    Christopher P. Demetriades / Fla. Bar No. 112917
    E-Mail:  cdemetriades@feldmangale.com

16

Case No. 09-20965-CIV-MARTINEZ

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised in the motion and states that the following issues have been resolved:  None.  The following issues remain unresolved:  All issues raised in the motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2010, the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

s/ Samuel A. Lewis

_____

## SERVICE LIST
*IMX, Inc. d/b/a Global Netoptex, Inc. v. E-Loan, Inc., et al.*
Case No. 09-20965-CIV-MARTINEZ

Edward M. Mullins
Annette C. Escobar
Astigarraga Davis Mullins & Grossman
701 Brickell Avenue, 16th Floor
Miami, Florida 33131-2845
Via CM/ECF

M. Elizabeth Day
John Allcock
Stanley J. Panikowski
Erik R. Fuehrer
Marc Belloli
DLA Piper LLP (US)
2000 University Ave.
East Palo Alto, California 94303
Via CM/ECF

Michael R. Casey
Davidson Berquist Jackson & Gowdey, LLP
4300 Wilson Boulevard, Seventh Floor
Arlington, Virginia 22203
Via CM/ECF

William G. Goldman
P.O. Box 2548
Menlo Park, CA  94026
Via CM/ECF

17