UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IMX, INC., d/b/a GLOBAL NETOPTEX, INC.,

        Plaintiff,

    vs.

E-LOAN, INC. and BANCO POPULAR NORTH AMERICA, INC.,

        Defendants.

CASE NO.  09-20965-CIV-MARTINEZ
Magistrate Judge Brown

**JOINT PRETRIAL STIPULATION**

        The parties, Plaintiff IMX, Inc. ("IMX") and Defendant E-Loan, Inc. ("E-Loan") hereby submit their Joint Pretrial Stipulation pursuant to S.D. Fla. L.R. 16.1.E and this Court's orders setting this case for trial.

**I.**      **JOINT STATEMENT OF THE CASE.**

        This is a patent infringement action.  IMX, Inc. ("IMX") alleges infringement of United States Patent No. 5,995,947 (the "'947 Patent") against defendant E-Loan, Inc. ("E-Loan") and contends that E-Loan is liable for damages for the period November 23, 2003, through December 31, 2008.  IMX further contends that E-Loan's infringement of the '947 Patent was willful.

        E-Loan disputes infringement of the '947 Patent and contends that the patent is invalid.  E-Loan also contends that IMX does not own the '947 Patent.[1]  E-Loan also contends that IMX is not entitled to damages even if E-Loan did infringe because IMX failed to provide E-Loan "actual notice" that E-Loan was infringing the '947 Patent prior to the filing of the First

---

[1] IMX objects to the inclusion of this statement to the extent it is going to be read to the jury.  E-Loan sees no reason why this statement should not be read to the jury.  The Parties' respective positions are set forth in Section 14 below.

1

Amended Complaint [D.E.#26] in this action.  Finally, E-Loan asserts that E-Loan's affirmative defenses: (i) bar IMX's recovery of any damages in this action; and (ii) require a reduction in any damages that may be awarded as a result of IMX's failure to "mitigate" its damages.[2]

**II.     BASIS OF FEDERAL JURISDICTION.**

This is an action for alleged patent infringement arising under the Patent Laws of the United States, Title 35 of the U.S. Code.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

**III.    PLEADINGS RAISING THE ISSUES.[3]**

A.     IMX's First Amended Complaint for Patent Infringement (D.E.#26).

B.     E-Loan's Amended Answer And Affirmative Defenses to IMX's Amended Complaint (D.E.#238-1).

C.     E-Loan's Amended Counterclaims (D.E.#237).

D.     IMX's Answer to E-Loan's Amended Counterclaims (D.E.#275).

---

[2]IMX objects to the inclusion of this statement to the extent it is going to be read to the jury.  E-Loan sees no reason why this statement should not be read to the jury. The Parties' positions are set forth in Section 14 below.

[3] On November 1, 2010, the Court granted in part and denied in part IMX's Renewed Motion for Judgment on the Pleadings.  (D.E. #383).  The motion was granted with regard to E-Loan's seventh affirmative defense (which E-Loan had previously withdrawn), with regard to E-Loan's fifteenth affirmative defense and Count III of E-Loan's counterclaims to the extent they have been withdrawn, with regard to E-Loan's assertions of unclean hands or patent misuse in its tenth affirmative defense, fifteenth affirmative defense and Count III of E-Loan's counterclaims to the extent E-Loan argues that Plaintiff has threatened litigation with regard to an invention that is not embodied in the patent and with regard to E-Loan's affirmative defense of implied license and waiver in its tenth affirmative defense.  The Motion was denied with respect to E-Loan's other affirmative defenses, including without limitation failure to mitigate damages, equitable estoppel, laches, and patent misuse relating to other of IMX's actions.

IV.     **LIST OF ALL PENDING MOTIONS OR OTHER MATTERS REQUIRING THE**
        **COURT'S ATTENTION.**

A.      IMX's Renewed Motion for Summary Judgment (D.E.#385, 386, & 387).

B.      E-Loan's Renewed Motion for Summary Judgment filed under seal on October
29, 2010 (D.E.#384).

C.      IMX's Appeal of Magistrate Judge Brown's Order Denying IMX's Motion to
Compel Further Limited Deposition Testimony Without Prejudice (D.E.#206).

D.      E-Loan's Appeal of Magistrate Judge Brown's Order Denying Motion to
Overrule Objections filed under seal on April 29, 2010 (D.E.#299).

E.      E-Loan's Motion to Disqualify Warren Myer as an Expert Witness & to Preclude
Him From Testifying at Trial filed under seal on January 19, 2010 (D.E.#150).

F.      IMX, Inc.'s *Motion In Limine* No. 1 to Exclude the Testimony of Nicholas
D'Ambrosio, Jr. (D.E.#221).

G.      IMX, Inc.'s Motion *In Limine* No. 2to preclude Defendant E-Loan, Inc. from
offering evidence or testimony referring, alluding, or insinuating that Dr. Michael I. Shamos and
Mr. Nicholas D'Ambrosio, Jr., E-Loan's expert witnesses, are attorneys or have legal
degrees(D.E.#251 & 253).

H.      IMX, Inc.'s Motion *In Limine* No. 3 to Preclude Defendant E-Loan, Inc. from
Offering Testimony from Edward Giedgowd, John Orta, or Eric Tran and Certain Testimony
from Scott McKinlay (D.E.#249 & 253).

I.       IMX, Inc.'s Motion *In Limine* No. 4to Preclude Defendant E-Loan, Inc. from
offering Any Testimony From IMX's Trial Counsel and From Referring and/or Alluding to Any
of Trial Counsel's Inter-Personal Relationships (D.E.#245 & 253).

J.      IMX, Inc.'s Motion *In Limine* No. 5 to Preclude Defendant E-Loan, Inc. from
Relying on an Advice of Counsel Defense at Trial(D.E.#247 & 253).

K.      IMX, Inc.'s Motion *In Limine* No. 6 to Exclude Any Expert Opinion Testimony
Offered by E-Loan, Inc. that was Not Previously Disclosed in Expert Reports (D.E.#254).

L.      IMX, Inc.'s Motion *In Limine* No. 7 to Exclude Any Evidence Concerning IMX's
Claims of Infringement Against Banco Popular That Were Dismissed Without Prejudice
(D.E.#255).

M.      IMX, Inc.'s Motion *In Limine* No. 8 to Exclude Any Evidence From the Jury
Regarding Equitable Defenses and Standing to be Decided by the Court (D.E.#256).

N.      IMX, Inc.'s Motion *In Limine* No. 9 to Exclude Evidence of Settlement
Agreements and Related Licenses and Communications (D.E.#257).

O.      E-Loan's Motion *in Limine* to Preclude Evidence Where Plaintiff Blocked Pre-
Trial Discovery or Had No Information filed under seal on April 9, 2010 (D.E.#243).

P.      E-Loan's Motion *in Limine* to Preclude the Introduction of Certain Documents at
Trial filed under seal on April 9, 2010 (D.E.#241).

Q.      E-Loan's Motion *in Limine* to Preclude Mr. Myer from Testifying at Trial filed
under seal on April 9, 2010 (D.E.#242).

R.      E-Loan's Motion *in Limine* to Preclude Testimony and Evidence from William
Goldman filed under seal on April 9, 2010 (D.E.#240).

S.      E-Loan's Motion for Leave to Amend Witness List (D.E. # 336).

T.      IMX's Request for Oral Argument on E-Loan's Motion for Leave to Amend
Witness List (D.E.#338).

U.      E-Loan's Motion To Strike Plaintiff's Supplemental Expert Reports (D.E.#353).

V.      E-Loan's Appeal Of Order Denying Sealed Motion To Compel (D.E.#365).

W.      E-Loan's Motion to Strike Improper Materials Filed in Connection With IMX's

Renewed Motion for Summary Judgment (D.E.#406).

## V.     ISSUES THAT THE PARTIES AGREE ARE NO LONGER RELEVANT TO THE ACTION.

Notwithstanding any allegations in the pleadings or positions asserted in motions to the

contrary, the parties agree that the following issues are no longer at issue in this action, and thus,

no longer relevant to the action:

A.      Indirect Infringement (e.g., Contributory Infringement and Inducement).  IMX

confirms that it is not pursuing claims of indirect infringement against E-Loan, and that IMX's

claims are limited to instances of direct infringement.

B.      Constructive Notice.  IMX confirms that it is not pursuing damage claims

predicated upon a constructive notice theory, and that IMX's claims are based solely upon actual

notice to E-Loan.

C.      Abandonment. E-Loan confirms that it is not pursuing the defense under 35

U.S.C. §102(c) of abandonment by the inventors named in the '947 Patent.

D.      Inequitable Conduct.  E-Loan confirms that it is not pursuing the issue of

inequitable conduct before the U.S. Patent & Trademark Office.

     E.    <u>Patent Misuse</u>.  E-Loan confirms that it is not pursuing the issue of patent misuse solely as it relates to IMX's assertion of the '947 Patent against products that were known not to infringe that patent. [4]

## VI.   <u>CONCISE STATEMENT OF UNCONTESTED FACTS.</u>[5]

The parties will not contest the following facts, but reserve the right to present evidence on these facts at trial:

     A.    The Plaintiff in this action, IMX, Inc. ("IMX"), was incorporated in Delaware on November 6, 1996, and always has been a Delaware Corporation.

     B.    E-Loan, Inc. is and always has been a Delaware Corporation.

     C.    In connection with its traditional lending operations, E-Loan operated a website at www.eloan.com since at least 1997.

     D.    E-Loan ceased its lending operations on December 31, 2008.

     E.    The application for the '947 Patent was filed on September 12, 1997 and assigned serial number 08/928,559 by the U.S. Patent & Trademark Office.

     F.    Stephen Fraser, Sadashiv Adiga and Suresh Payankannur are named as inventors in the '947 Patent, which is entitled "Interactive Mortgage and Loan Information and Real-Time Trading System."

---

[4] E-Loan continues to claim patent misuse as it relates to other of IMX's actions.  IMX requested E-Loan to specify "other of IMX's actions" on which it relies for its alleged patent misuse defense and E-Loan only identified IMX's alleged attempts to enforce a patent it does not own. To the extent E-Loan's patent misuse defense remains, it should be limited to E-Loan's identification of the alleged "other actions" set forth above.  E-Loan sees no reason why it should disclose its trial strategy on this issue simply because IMX, on December 30, 2010—well *after* the close of discovery—made a request that effectively seeks disclosure of what E-Loan intends to present at trial.  Moreover, IMX's inability to preview E-Loan's strategy on this issue does not justify any limitation of the defense.

[5] By agreeing to the inclusion of certain uncontested facts in the Joint Pretrial Stipulation, IMX is not waiving the positions it has advanced in Section 14 below.

G.     Stephen Fraser, Sadashiv Adiga and Suresh Payankannur executed a written agreement entitled "Assignment" and dated May 21, 1998, pursuant to which they assigned to "IMX MORTGAGE EXCHANGE, a California corporation," their rights to the invention described as "INTERACTIVE MORTGAGE AND LOAN INFORMATION AND REAL-TIME TRADING SYSTEM," with further reference to a U.S. Patent application, serial number 08/928,559.

H.     Mr. Fraser died on July 18, 1999.

I.     On November 30, 1999, the '947 Patent issued.

J.     The hypothetical negotiation date for purposes of assessing a reasonable royalty is November 30, 1999.

K.     On November 23, 2003, IMX sued E-Loan for patent infringement in the United States District Court for the District of Delaware in a case styled *IMX, Inc. v. LendingTree, LLC,* Case No. 03-1067 (SLR) (the "Delaware Action").

L.     On June 8, 2004, IMX and E-Loan stipulated to the dismissal of E-Loan from the Delaware Action, and E-Loan was dismissed by the Delaware Court on June 14, 2004 without prejudice.

M.     After the dismissal of E-Loan without prejudice from the Delaware Action, IMX and E-Loan did not have any contact with one another again until IMX filed the Complaint in this lawsuit on April 13, 2009.

## VII.   STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED.

The parties contest the following facts:

A.      **Standing**[6]

    1.      Whether the Plaintiff, IMX, owns the '947 Patent.

    2.      Whether the Plaintiff, IMX, has standing to assert claims based upon the '947 Patent.

B.      **Direct Infringement**

    1.      Whether E-Loan infringed claims 1, 2, 7, 8, 9, 10, 11, 12, 19, 20, 21, 26, 27, 28, 29, 30, and 31 of the '947 Patent either literally or under the doctrine of equivalents.

C.      **Validity**

    1.      Whether the '947 Patent is invalid for failure to comply with 35 U.S.C. §102.[7]

    2.      Whether under 35 U.S.C. §102(b) the invention was used for commercial purposes more than one year prior to the filing date of the application for the '947 Patent.[8]

---

[6]The Parties' respective positions are set forth in Section 14 below.  In addition, IMX does not believe that Standing is an issue of fact that remains to be litigated.  *See* IMX's Renewed Motion for Summary Judgment (D.E.#385, 386, & 387).  E-Loan disagrees.  Indeed, IMX has still not presented *any* evidence to establish that it received *any* assignment of rights in and to the '947 Patent, much less that it is the sole and exclusive owner of any patent rights. *See* E-Loan's Renewed Motion for Summary Judgment (D.E.#383), E-Loan's Opposition to IMX's Renewed Motion for Summary Judgment (D.E.#399, 398); E-Loan's Reply Memorandum In Support Of Its Renewed Motion For Summary Judgment (D.E.#403); E-Loan's Motion to Strike Improper Materials Filed in Connection with IMX's Renewed Motion for Summary Judgment (D.E.#406). If the Court does not resolve the issue of standing on summary judgment, and since IMX alone bears the burden of proof on the issue, *see* Section 14 below, then Standing remains a factual issue which IMX must present at trial.
[7] IMX objects to this issue as set forth in Section 14 below.
[8] IMX objects to this issue as set forth in Section 14 below.

3.      Whether claims 1, 2, 7, 8, 9, 10, 11, 12, 19, 20, 21, 26, 27, 28, 29, 30, and 31 are anticipated by prior art.

4.      Whether claims 1, 2, 7, 8, 9, 10, 11, 12, 19, 20, 21, 26, 27, 28, 29, 30, and 31 are obvious in light of prior art.

5.      Whether claims 1, 2, 7, 8, 9, 10, 11, 12, 19, 20, 21, 26, 27, 28, 29, 30, and 31 are invalid under 35 U.S.C. §112 ¶1 (failure to comply with the 'best mode' requirement, failure of 'written description').[9]

D.      **Enforceability**

1.      Whether the '947 patent is enforceable.[10]

E.      **Damages**

1.      Whether IMX is entitled to receive compensatory damages in the form of a reasonable royalty for the time period November 24, 2003 through December 31, 2008 ("Damages")[11].

2.      The amount of Damages, if any, IMX is entitled to receive.[12]

3.      Whether laches and/or any presumptions relating to laches apply in this action to bar the recovery of any alleged Damages prior to the date of commencement of this action.[13]

---

[9] The Parties disagree as to whether this issue should be considered by the jury. The Parties' respective positions are set forth in Section 14 below.

[10] The Parties disagree as to whether this issue should be considered by the jury. The Parties' respective positions are set forth in section 14 below.

[11] By agreeing to define "Damages" as E-Loan has requested, IMX in no way waives its right to seek interest and costs or enhanced damages upon a finding of willful infringement.

[12] By agreeing to define "Damages" as E-Loan has requested, IMX in no way waives its right to seek interest and costs or enhanced damages upon a finding of willful infringement.

[13] The Parties disagree as to whether this issue should be considered by the jury. The Parties' respective positions are set forth in Section 14 below.

    4.    The number of E-Loan's transactions, if any, where all of the steps of the method described in the '947 Patent were actually used.[14]

    5.    Whether IMX failed to mitigate its Damages so as to justify a reduction of any Damages awarded or to bar recovery of any Damages.[15]

F.    **Willful Infringement**

    1.    Whether E-Loan's infringement, if any, can be shown to be willful by clear and convincing evidence.

## VIII.   STATEMENT OF ISSUES OF LAW ON WHICH THERE IS AGREEMENT.[16]

A.    Decisions issued by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit (which expressly adopted as binding precedent the decisions from the Court of Claims and the Court of Customs and Patent Appeals announced before the close of business on September 30, 1982) are binding precedent for this action. Decisions issued by the U.S. Court of Appeals for the Eleventh Circuit (which includes all decisions from the former Fifth Circuit rendered prior to October 1, 1981) are binding precedent for this action in matters involving purely procedural questions not pertaining to patent law. *See Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*, 482 F.3d 1317, 1320 (Fed. Cir. 2007); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-1356 (Fed. Cir. 2007); *Bonner v. City of Prichard*, 661 F.2d

---

[14] The Parties disagree as to whether this issue should be considered by the jury. The Parties' respective positions are set forth in Section 14 below.

[15] The Parties disagree as to whether this issue should be considered by the jury. The Parties' respective positions are set forth in Section 14 below.

[16] By agreeing to the inclusion of certain statements of the law in this section, the Parties are not waiving their positions advanced in connection with the issues appearing in Section 14 below. In addition, in certain circumstances, one or both parties have argued that certain legal issues should be determined by the Court prior to the commencement of the jury trial. By including certain statements of law, the parties do not agree that each issue listed is properly one that the Court must determine.

1206, 1209 (11th Cir. 1981).   All other case law from other jurisdictions may be cited as persuasive precedent.

        B.    IMX must prove infringement by E-Loan by a preponderance of the evidence. *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

        C.    IMX must prove willful infringement by E-Loan by clear and convincing evidence. *In re Seagate Technology, LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007).

        D.    Literal infringement of a claim is found when the accused product or system embodies each and every limitation of the asserted claim.  *PC Connector Solutions, LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1364 (Fed. Cir 2005); *Riles v. Shell Exploration and Production Co.,* 298 F.3d 1302, 1308 (Fed. Cir. 2002)

        E.    A product or process that does not literally infringe upon the express terms of a patent claim nevertheless may be found to infringe if there is "equivalence" between the elements of the accused product, system, or method and the claimed elements of the patented invention. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).

        F.    Infringement under the doctrine of equivalents requires proof of insubstantial differences between the claims and accused products, systems, or processes.  *Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543, 1555 (Fed. Cir. 1997).

        G.    A feature of the accused device is "equivalent" to an element of the claimed invention if it performs substantially the same function in substantially the same way to achieve substantially the same result.  *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950).

H.     Whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States, or imports into the United States, any patented invention . . . infringes that patent under 35 U.S.C. §271(a).

I.     A determination of patent infringement requires a two-step analysis.  First, the Court must interpret the claims.  Second, the fact finder must compare the claims to the accused device or system to determine whether each claim element or its substantial equivalent is present. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

J.     When an infringer has actual notice of a patentee's rights, the infringer has an affirmative duty of due care to avoid infringement.  *Golden Blount, Inc. v. Robert H. Peterson, Co.*, 438 F.3d 1354, 1368 (Fed. Cir. 2006).

K.     Willful infringement is a question of fact and must be proven by clear and convincing evidence.  *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).

L.     Infringement is willful when the infringer was aware of the asserted patent, but nonetheless "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC.*, 497 F.3d 1360, 1371 (Fed.Cir.2007) (en banc). After satisfying this objective prong, the patentee also must show that the infringer knew or should have known of this objectively high risk.  *Id.*

M.     The assessment of the amount of damages is a question of fact, and is decided by the jury when trial is to a jury.  *Weinar v. Rollform, Inc.*, 744 F.2d 797, 808 (Fed. Cir. 1984).

N.     IMX must prove the amount of damages by a preponderance of the evidence. *Smithkline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

O.      The Federal Circuit has "endorsed the conceptual framework of a hypothetical negotiation between patentee and infringer as a means for determining a reasonable royalty." *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387 (Fed. Cir. 2003).  Some of the factors relevant in a reasonable royalty determination are:  (1) the royalties received by the patentee for the licensing of others under the patent-in-suit; (2) the rates paid by the licensee for the use of other patents comparable to the patent-in-suit; (3) the nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold; (4) the licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly; (5) the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator or sales of his non-patented items, and the extent of such derivative or convoyed sales; (7) the duration of the patent and the term of the license; (8) the established profitability of the product made under the patent, its commercial success, and its current popularity; (9) the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results; (10) the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention; (11) the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use; (12) the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the

invention or analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business, risks, or significant features or improvements added by the infringer; (14) the opinion testimony of qualified experts; and (15) the amount that a licensor (such as the patentee) and a licensee (such as the alleged infringer) would have agreed upon (at the time the alleged infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount to which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license. *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd,* 446 F.2d 295 (2d Cir. 1971).

P.      Upon finding willful infringement, the Court may increase damages up to three times the actual damages assessed. 35 U.S.C. §284.

Q.      In exceptional cases, the Court may award reasonable attorneys' fees to the prevailing party. 35 U.S.C. §285.

R.      "[A] business method is simply one kind of 'method' that is, at least in some circumstances, eligible for patenting under [35 U.S.C.] §101." *Bilski v. Kappos,* 561 U.S. ___ (2010)

S.      The Supreme Court's "precedents establish that the machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under §101." *Bilski v. Kappos,* 561 U.S. ___ (2010).   However,

"[t]hemachine-or-transformation test is not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Id.*

      T.     The Supreme Court's "precedents provide three specific exceptions to [35 U.S.C.] §101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski v. Kappos,* 561 U.S. ___ (2010)."The §101 patent-eligibility inquiry is only a threshold test. Even if an invention qualifies as a process, machine, manufacture, or composition of matter, in order to receive the Patent Act's protection the claimed invention must also satisfy 'the conditions and requirements of this title.'[35 U.S.C.] §101. Those requirements include that the invention be novel, see §102, nonobvious, see §103, and fully and particularly described, see §112." *Id.*

      U.     "If a person of ordinary skill can implement a predictable variation, §103 likely bars its patentability.  For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417, 127 S.Ct. 1727, 1740 (2007).

      V.     Written description requires that the patent specification clearly allow persons of ordinarily skill in the art to recognize that the inventor actually invented as broadly as what is claimed. *Bilstad v. Wakalopulos,* 386 F.3d 1116, 1125 (Fed. Cir. 2004); *In re Gosteli,* 872 F.2d 1008, 1012 (Fed. Cir. 1989).

      W.     The description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the full scope of the invention without undue experimentation. *Genentech, Inc. v. Novo Nordisk AIS,* 108 F.3d 1361, 1365 (Fed. Cir. 1997).

X.      "'The scope of the claims must be less than or equal to the scope of the enablement' to 'ensure[] that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims.'" *Sitrick v. Dreamworks, LLC,* 516 F.3d 993, 999 (Fed. Cir. 2008).

Y.      The enablement provision of Section 112 is satisfied when the full scope of the claimed invention is set forth in the specification such that one of ordinary skill in the art need not engage in undue experimentation in order to appreciate the scope of the invention. *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1326 (Fed. Cir. 2007).

Z.      If the inventor knew the best way, or "mode," of making and using the claimed invention at the time the patent application was filed, then the patent must include a description of the inventor's best mode that is sufficient to enable a person skilled in the art to carry out that best mode. *Consolidated Aluminum Corp. v. Foseco Intern. Ltd.,* 910 F.2d 804, 808 (Fed. Cir. 1990).

AA.    Best mode requires inventors "to disclose aspects of making or using the claimed invention [when] the undisclosed matter materially affect[s] the properties of the claimed invention." *Bayer AG v. Shein Pharms., Inc.*, 301 F.3d 1306, 1319 (Fed. Cir. 2002);*Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1364 (Fed. Cir. 2008).  It does not require the disclosure of "routine details" that would be apparent to one of ordinary skill in the art practicing the invention. *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1223 (Fed. Cir. 2006).

BB.    To establish equitable estoppel, a defendant must establish three elements: (1) the plaintiff, who has knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence; (2) the defendant relies upon that communication; and

(3) the defendant would be harmed if the plaintiff is later permitted to assert any claim inconsistent with its earlier conduct. *A.C. Auckerman, Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed. Cir. 1992).

CC.   Material prejudice, in the context of equitable estoppel, is the same as material prejudice in the context of laches. *A.C. Auckerman* 960 F.2d at 1042.

DD.   The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court. *Keystone Driller Co., v. General Excavator Co.*, 290 U.S. 240 (1933).

EE.   The "patent misuse doctrine is an extension of the equitable doctrine of unclean hands, whereby a court of equity will not lend its support to the enforcement of a patent that has been misused." *B. Braun Med., Inc. v. Abbott Laboratories,* 124 F.3d 1419, 1427 (Fed. Cir. 1997). The defense of patent misuse renders the patent unenforceable until the misuse is purged. *Id.*

FF.   "Laches is a long-recognized defense to a patent infringement suit that arises when a patent holder 'neglect[s] or delay[s] . . . bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar.'" *Gasser Chair Co., Inc. v. Infanti Chair Mfg Corp.*, 60 F.3d 770, 774 (Fed. Cir. 1995), *quoting, A.C. Aukerman Co. v. R.L. Chaides Constr. Co..,* 960 F.2d 1020, 1028-1029 (Fed. Cir. 1992).

GG.   To prevail on a defense of laches, a defendant must prove two elements: "(1) [p]laintiff[] delayed filing suit for an unreasonable and inexcusable length of time from the time they knew or reasonably should have known of their claims against [defendant], and (2) the delay operated to the prejudice or injury of the defendant. *Ultimax Cement Mfg Corp. v. CTS*

*Cement Mfg Corp.*, 587 F.3d 1339, 1349-1350 (Fed. Cir. 2010); *Gasser,* 60 F.3d at 773; *A.C. Aukerman Co.*, 960 F.2d at 1032.

HH.    For laches, a plaintiff's delay is measured from the time it knew or reasonably should have known of a defendant's allegedly infringing activities to the date of suit. *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed.Cir.1998), *quoting, A.C. Aukerman Co.*, 960 F.2d at 1032.

II.    A rebuttable presumption of laches is triggered by a six-year delay: "[T]he underlying critical factors of laches are presumed upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity." *A.C. Aukerman Co.*, 960 F.2d at 1035-1306. Once the laches presumption is established, the defendant can remain "utterly mute" and is not required to come forward with any evidence of prejudice. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

JJ.    Laches can be established when there exists any unreasonable delay, and there is no requirement that the delay be six years or longer. *Ultimax Cement Mfg Corp.*, 587 F.3d at 1349-1350. "[T]he length of time that is unreasonable or inexcusable delay in filing suit depends on the facts and circumstances of each case." *Gasser,* 60 F.3d at 773.

KK.    For laches purposes, the prejudice resulting from a plaintiff's delay "may be either economic or evidentiary." *A.C. Aukerman Co.*, 960 F.2d at 1033. "Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.* "Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit."

*Id* ."Such damages or monetary losses are not merely those attributable to a finding of liability for infringement" because "[e]conomic prejudice would arise in every suit."[17] *Id.*

LL.   "Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense." *A.C. Aukerman Co.,* 960 F.2d at 1033.

MM.   Where a laches defense has been established, a plaintiff's recovery, if any, is limited to any damages that accrued after the commencement of the action. *A.C. Aukerman Co.,* 960 F.2d at 1041.

NN.   If a single limitation is missing from the alleged prior art, the reference *cannot* anticipate the claims as a matter of law. *Abbott Labs. v. Sandoz, Inc.,* 544 F.3d 1341, 1345 (Fed. Cir. 2008).

OO.   The Eleventh Circuit, like "Most federal courts . . . regard the failure to mitigate as an affirmative defense under Rule 8(c)'s catchall clause which provides for 'any other matter constituting an avoidance or affirmative defense.'" *Frederick v. Kirby Tankships, Inc.,* 205 F.3d 1277 (11th Cir. 2000).

PP.   "[A] party cannot recover damages he could have prevented through the exercise of reasonable care and diligence." *Messer v. E.F. Hutton & Co.,* 833 F.2d 909, 922 (11th Cir. 1987).

QQ.   The "patent misuse doctrine is an extension of the equitable doctrine of unclean hands, whereby a court of equity will not lend its support to the enforcement of a patent that has been misused." *B. Braun Med, Inc. v. Abbott Laboratories,* 124 F.3d 1419, 1427 (Fed. Cir.

---

[17] By agreeing to the inclusion of these statements from *A.C. Aukerman,* E-Loan is not waiving its right to rely upon the balance of that opinion, including specifically the very next sentence, which provides:  "On the other hand, this does not mean that a patentee may intentionally lie silently in wait watching damages escalate, particularly where an infringer, if he had notice, could have switched to a non-infringing product." *Id.*(citations omitted).

1997); *see also C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998)("The defense of patent misuse arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage"). The defense of patent misuse renders the patent unenforceable until the misuse is purged. *C.R. Bard, Inc.* 157 F.3d at 1372.

RR.    A patent owner may seek to "enforce his patent right against infringement . . ." without being guilty of misuse or illegal extension of patent rights. 35 U.S.C. §271(d)(3).

SS.    "It is not patent misuse to bring suit to enforce patent rights not fraudulently obtained." *C.R. Bard*, 157 F.3d at 1373.

TT.    A co-owner of a patent who seeks to bring an action for infringement must join the other co-owners in the action to avoid a dismissal for a lack of standing. *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1331 (Fed. Cir. 2009)("As this court has explained, if a co-owner of a patent wishes to sue for infringement, he must join the other co-owners in the action in order to avoid a dismissal for lack of standing", *citing Isr. Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007)).

UU.    When the patented invention consists of a series of acts or steps, when the claim is directed to a method, the patent is not infringed unless all steps or stages of the claimed method were utilized. *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1363 (Fed. Cir. 2009).

VV.    A patent owner may only recover damages for transactions that actually used the steps of the claimed method. *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1358 (Fed. Cir. 2009).

IX.     **STATEMENT OF ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT.**

A.      Whether IMX owns the '947 Patent.[18]

B.      Whether IMX has joined all co-owners of the '947 Patent as plaintiffs in this action.

C.      Whether IMX has standing to assert claims based upon the '947 Patent.

D.      Whether a use of an invention by the inventor more than one year before the application filing date satisfies the section 102(b) bar and renders the patent invalid.[19]

E.      Whether E-Loan infringed the '947 patent and whether such infringement was willful.

F.      Whether the '947 Patent claims statutory subject matter as required by 35 U.S.C. §101.

G.      Whether the burden of proof for a defense of invalidity is clear and convincing evidence or preponderance of the evidence.[20]

H.      Whether claims 1, 2, 7, 8, 9, 10, 11, 12, 19, 20, 21, 26, 27, 28, 29, 30, and 31 are obvious in light of prior art.

I.      Whether claims 1, 2, 7, 8, 9, 10, 11, 12, 19, 20, 21, 26, 27, 28, 29, 30, and 31 are invalid under 35 U.S.C. §112 ¶1 (failure of 'enablement').[21]

---

[18] The Parties disagree as to whether factual issues relating to this legal issue should be resolved by the jury. The Parties' respective positions on this issue are set forth in Section 14 below.

[19] IMX objects to the inclusion of this issue in the Joint Pretrial Stipulation. The Parties' respective positions on this issue are set forth in Section 14 below.

[20] The Parties disagree as to the inclusion of the issue. The Parties' respective positions on this issue are set forth in Section 14 below.

J.      Whether IMX engaged in inequitable conduct so as to render the '947 Patent unenforceable.[22]

K.      Whether IMX failed to join indispensible parties.

L.      Whether the claims of the '947 Patent are capable of being infringed by E-Loan alone.[23]

M.      Whether the complaint in the Delaware Action identified the accused product or service used or provided by E-Loan so as to constitute "actual notice."

N.      Whether E-Loan had "actual notice" by virtue of answering the complaint and filing counterclaims in the Delaware Action.[24]

O.      Whether the Stipulation dismissing E-Loan from the Delaware Action precludes the complaint in the Delaware Action (assuming it adequately identifies the accused product or service) from constituting "actual notice."

P.      Whether IMX provided actual proper notice as required by 35 U.S.C. §287(a) to enable it to recover any damages prior to the filing of this action.

Q.      Whether laches and/or any presumptions relating to laches apply in this action to bar the recover of any alleged damages prior to the date of commencement of this action.

---

[21]The Parties disagree as to whether this is still an issue in the case.  The Parties' respective positions are set forth in Section 14 below.

[22] IMX objects to E-Loan's use of the word "inequitable" in this issue because it contradicts E-Loan's withdrawal of its inequitable conduct defense as it relates to activities before the United States Patent Office and it has the potential to mislead and confuse the fact finder. E-Loan respectfully disagrees.  While the term "inequitable" can be applied to conduct before the Patent Office, it can also apply in numerous other contexts.  Moreover, E-Loan believes the term is no more likely to confuse the fact finder than terms like "liable" and "willful" which appear in the first paragraph of the Statement of the Case.

[23] The Parties disagree as to whether this is still an issue in the case.  The Parties' respective positions are set forth in Section 14 below.

[24] E-Loan objects to this issue as set forth in Section 14 below.

R.      Whether E-Loan, Banco Popular North America, Inc. and/or Popular, Inc. can establish any economic or evidentiary prejudice as a result of IMX's stipulation to dismiss without prejudice E-Loan from the Delaware Action and IMX's commencement of this action.

S.      Whether E-Loan was prejudiced as a result of IMX's stipulation to dismiss E-Loan from the Delaware Action.

T.      Whether IMX is estopped from recovering any damages from E-Loan.

U.      If E-Loan is found to have willfully infringed by clear and convincing evidence, whether IMX is entitled to enhanced damages.

V.      Whether IMX has engaged in inequitable conduct barring the recovery of damages.[25]

W.      Whether any of E-Loan's other equitable defenses preclude IMX from recovering any damages in this action.

X.      In addition to those specific issues set forth in this Section, there are additional legal issues raised in the Parties' respective motions *in limine* currently pending before this Court.   The motions are identified in Section IV above.

## X.      LIST OF TRIAL EXHIBITS.

A.      The parties will offer as exhibits at trial one or more of the exhibits set forth in their respective trial exhibit lists.  These lists include the exhibit number to be used at trial and a

---

[25] IMX objects to E-Loan's use of the word "inequitable" in this issue because it contradicts E-Loan's withdrawal of its inequitable conduct defense as it relates to activities before the United States Patent Office and it has the potential to mislead and confuse the fact finder. E-Loan respectfully disagrees.  While the term "inequitable" can be applied to conduct before the Patent Office, it can also apply in numerous other contexts.  Moreover, E-Loan believes the term is no more likely to confuse the fact finder than terms like "liable" and "willful" which appear in the first paragraph of the Statement of the Case.

description sufficient to identify the exhibit to the other party, such as by production number, deposition exhibit number, or otherwise.

B.    IMX's list of trial exhibits and E-Loan's objections thereto is attached at <u>Exhibit</u> <u>A</u> to this Stipulation.

C.    E-Loan's list of trial exhibits and IMX's objections thereto is attached at <u>Exhibit</u> <u>B</u> to this Stipulation.

D.    The parties may introduce additional documents beyond those listed in Exhibits A and B for impeachment purposes.[26]

E.    Legible photocopies of United States patents and the contents of the Patent and Trademark Office file histories may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.  The dates of filing and issuance shall be deemed to be shown on the face of the patent, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

F.    Legible photocopies of government documents and filings may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.  The dates of filing and issuance shall be deemed to be shown on the face of the documents, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

---

[26] The Parties disagree over issues relating to documents used for impeachment purposes, and these issues are set forth in Section 14 below.

G.    Legible photocopies of deposition transcripts may be offered and received in evidence in lieu of certified or original copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

## XI.    LIST OF TRIAL WITNESSES.

A.    No witness called by a party in support of its case-in-chief shall be permitted to testify at trial unless identified in this Stipulation or unless the Court determines that such witness should be called.

B.    A list of trial witnesses that IMX intends to call at trial either live or by deposition, and any objections related thereto, are listed at Exhibit C, attached to this Stipulation.

C.    A list of witnesses that E-Loan intends to call at trial either live or by deposition, and any objections related thereto, are listed at Exhibit D, attached to this Stipulation.

## XII.    ESTIMATED TRIAL TIME.

IMX believes the trial of this matter will take 5 days.  E-Loan estimates that the trial of this matter will take 6-8 days to complete.

## XIII.    ATTORNEYS' FEES.

Upon a finding for a party, the parties reserve the right to address the issue with the Court of whether either party is entitled to attorneys' fees and costs.

## XIV.    MISCELLANEOUS ISSUES.

The parties request that the Court hold a pretrial conference to discuss the following issues.

A.     Equitable And Legal Issues.

    1.     IMX's Position.

IMX would like to discuss the presentation of evidence relating to E-Loan's arguments regarding equitable defenses and standing issues E-Loan has raised, including whether such evidence will be presented to the jury or to the Court.  Specifically, E-Loan's Answer, served on April 8, 2010, (as modified by D.E. #383) includes a number of affirmative defenses that are equitable in nature, including:  E-Loan's Second Affirmative Defense regarding standing; E-Loan's Tenth Affirmative Defense regarding the equitable doctrines of laches, estoppel, and/or unclean hands; and E-Loan's Fifteenth Affirmative Defense regarding patent misuse.  (D.E.#222 at 5-6.)  Further, IMX has moved for summary judgment on the standing issue.  (D.E.#144).  To the extent that the Court is not inclined to grant IMX's Motion for Summary Judgment, it is IMX's position that equitable defenses and standing issues should be heard outside the presence of the jury, and only to the extent that E Loan's defenses of invalidity and non-infringement are not successful.  Subject to the Court's availability, the bench trial can occur during the upcoming trial, but outside the presence of the jury.  To the extent these equitable defenses are not presented to the jury, IMX requests that the Joint Statement of the Case be revised to omit any mention of legal or equitable issues not for the jury's consideration.  E-Loan has failed to articulate, let alone demonstrate, the existence of overlapping factual questions that are "relevant" to both legal and equitable issues under FRE 401-403.  Finally, contrary to E-Loan's assertions, willful infringement is not an equitable issue, but an issue for the jury to decide. *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226 (Fed. Cir. 1991).

2.     E-Loan's Position.

E-Loan respectfully disagrees with IMX's position regarding E-Loan's equitable defenses, standing and bifurcation.

a.     Standing.

First, standing is not an equitable issue, but a legal one.  Whether a party has standing is a legal/jurisdictional issue, and whether a party "owns" the patent such that it is entitled to enforce that patent is part of IMX's burden of proof.  *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990); *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.,* 587 F.3d 1375, 1378 (Fed. Cir. 2009); *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1032-33 (Fed. Cir. 1995). Stated another way, IMX must prove that it owns the patent in suit. *See, e.g.,* 35 U.S.C. §281; *Enzo APA & Son v. Geapag A.G.,* 134 F.3d 1090 (Fed. Cir. 1998)(a patent infringement action must be brought by the party or parties holding legal title to the patent). The fact that E-Loan may have asserted standing as a defense does not permit IMX to avoid its burden of proof to establish that it is the owner of the '947 Patent.

b.     Equitable Issues.

First, E-Loan believes that there is sufficient factual overlap between factual and legal issues, including its equitable defenses, such that evidence of same should be presented the jury at one time. *See, e.g., Cabinet Vision v. Cabinetware,* 129 F.3d 595, 600 (Fed. Cir. 1997)(courts should submit to the jury factual questions that are relevant to both legal and equitable issues); *Carter v. DecisionOne Corp. through C.T. Corp. System,* 122 F.3d 997, 1006 (11th Cir. 1997)(backpay finding was proper where "the backpay determined by the jury . . . was apparently reduced to reflect her failure to entire mitigate her damages."). As detailed in E-Loan's Opposition to IMX's Motion in Limine on the issue, and contrary to IMX's assertion

above, the factual issues are relevant to both legal and equitable issues. Indeed, standing is not a separate issue, but rather, is intertwined with the other issues that IMX must prove in order to sustain a claim for patent infringement.

Second, the issue of IMX's lack of standing was raised in E-Loan's Renewed Motion for Summary Judgment filed under seal on October 29, 2010, and a ruling on the issue of standing is only appropriate as a matter of law if this Court finds that no issue of genuine material fact exists. If this Court finds that questions of fact preclude summary judgment on the issue, then those questions of fact must be resolved by the jury before the Court can rule, as a matter of law, on the issue of standing.

Third, E-Loan's equitable issues are no different than IMX's issue of willful infringement. In both cases, the jury makes factual findings and then it is left to the Court to make the final determination based upon the facts. *See, e.g., Odetics, Inc. v. Storage Technology Corp.,* 185 F.3d 1259, 1274 (Fed. Cir. 1999)("the decision to grant or deny enhanced damages remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances").

     c.    <u>Bifurcation</u>.

E-Loan also asserts that IMX's suggestion of conducting a bench trial in order to resolve issues outside of the presence of the jury amounts to an untimely request to bifurcate the trial. IMX failed to move to bifurcate the trial when such motions would have been appropriate. The deadline for filing such motions was April 9, 2010. This Court has already denied the Defendants' Motion to Bifurcate Action [D.E.#365] into liability and damages phases on the grounds that bifurcation would not be more convenient or efficient for the Court, and E-Loan sees no reason why IMX's attempt to bifurcate the trial would be more convenient or efficient.

B.      Order of Witnesses.

1.      IMX's Position.

IMX requests that at least 24 hours beforehand, a party calling a witness will advise all other parties in writing of the following:  (1) the names and order of the call of witnesses for that day; (2) the exhibits to be offered through the direct examination of each witness during that day; (3) whether each witness will testify live or via deposition; and (4) for witnesses who testify via deposition, the final deposition transcript (if the deposition is to be read by counsel) or videotape (if the deposition is to be presented by videotape).  IMX also requests that the deposition transcripts or videotapes include all counter-designations of the adverse party, unless prior permission to eliminate certain counter-designations has been obtained.  IMX requests that each adverse party shall have 12 hours to review and object to the deposition testimony.   In connection with the identification process set forth above, IMX further requests that a party identifying any witnesses shall indicate which of its witnesses will be its last witness called; upon receiving notification that a party has named its last witness, the other party shall have 12 hours to provide the required identification of its witnesses and exhibits to complete the day's testimony.

2.      E-Loan's Position.

E-Loan disagrees, and asserts that such requirements are unnecessary, are not sanctioned by any Rules that govern the order of proof in this District, and in some instances, IMX's suggestions even run contrary to the Rules.  E-Loan believes the parties should not be "locked in" to a certain order of proof, or witnesses, particularly as here, where so many of the parties' witnesses are from out of state.  The parties should be free to put on their cases as they see fit, within the scope of the Rules, and to modify the order of proof as the case presents itself.  If the

parties, as a matter of courtesy, would like to identify the order of witnesses they intend to call, the issue should be left to the parties.

On a related note, E-Loan suggests that witnesses only be called once, such that if a witness is called by a party in its case in chief, the opposing party can conduct both cross examination and direct for its own case at the same time, and need not subject the witness to being recalled.  This is a procedure utilized by other judges in the Southern District of Florida (including Judge Moreno) and saves overall trial time by obviating the need to call witnesses twice.  It also helps in this situation where most, if not all, of the witnesses are from outside this District.

       C.     <u>Demonstratives</u>.

Except for demonstratives used for cross-examination, created during testimony of a witness or used during opening, all demonstrative exhibits shall be exchanged no less than one business before the use of that demonstrative at trial; however, if it is not practicable or feasible to exchange such demonstrative exhibits one business day before the use of that demonstrative at trial, whether due to the timing of the conclusion of a party's case or otherwise, then the party seeking to use a demonstrative shall exchange such demonstratives at the party's earliest convenience.  A party's failure to exchange demonstratives one business day before the use of that demonstrative at trial shall not be a basis for precluding the party from using the demonstrative.

"Demonstrative" exhibits do not include documents listed on the parties' respective trial exhibit lists which have been or will be highlighted or enlarged for use in front of the jury.  The parties are unable to agree upon a deadline for exchanging demonstratives for use in their respective opening statements.  IMX requests that the parties exchange demonstratives for use in

their respective opening statements no later than 12 pm (noon) the calendar day before the opening statements are to be given.  E-Loan disagrees, because if the trial begins on a Monday, the exchange of demonstratives will likely not take place until noon on Sunday.  As such, E-Loan requests that the parties exchange demonstratives for use in their respective opening statements no later than 12 pm (noon) the *business* day before the opening statements are to be given.

For purposes of all exchanges of demonstratives, parties will use their best efforts to provide color copies of color demonstrative exhibits.  Exchange of large boards is not required, but these demonstrative exhibits may be exchanged by 8½ by 11 paper copies.  To the extent animations or sequentially presented slides (e.g., PowerPoint Presentation-type animations) are to be used by any party, the party using such must provide the other parties with fully functional electronic versions of the presentation as part of these exchange requirements.

D.    Witnesses In The Courtroom.

IMX requests that unless a witness has testified during the party's case-in-chief, no testifying witnesses other than expert witnesses or a designated corporate representative shall be present in the courtroom during the testimony of any other witness.

E-Loan generally agrees, also seeks to invoke Rule 615, except as it relates to trial counsel, experts, and corporate representatives who may sit through any portion of the trial. However, any witnesses other than trial counsel, expert witnesses or a designated corporate representative may not be present in the courtroom at any time, except when providing testimony.

E.      Impeachment Exhibits.

        1.      IMX's Position.

IMX objects to the use of any document for impeachment purposes or otherwise if it was not produced during discovery.

        2.      E-Loan's Position.

E-Loan believes that IMX's objection is misplaced.  The Rules permit wide latitude regarding impeachment, and there is no reason the Parties should be limited regarding the scope of materials that may be used to impeach.

F.      Failure To Mitigate Damages Defense.

        1.      IMX's Position.

The Court held that failure to mitigate damages "may rarely be relevant in a patent infringement case." (D.E.#383 at 10).  IMX submits that failure to mitigate is not a relevant defense to a claim for a reasonable royalty in a patent infringement action and should not be included in the Joint Pretrial Stipulation or presented to the jury. IMX is not seeking actual damages (the profits the patentee lost due to infringement).  Instead, IMX is seeking the determination of a reasonable royalty due to E-Loan's infringement.  As infringement is an ongoing tort and as IMX is entitled to no less than a reasonable royalty upon a finding of infringement, IMX had no duty to mitigate its damages, and could not mitigate based on E-Loan's infringement, during the period of E-Loan's infringement.

Moreover, upon a finding of infringement, the court shall award the claimant damages adequate to compensate for the infringement, but, in no event, less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. 35 U.S.C. §284.  This sets the floor below which damages awards may not fall. *Rite-Hite*

*Corp. v. Kelly Co., Inc.,* 56 F.3d 1538, 1544 (Fed. Cir. 1995).  IMX respectfully submits that to allow E-Loan to present a failure to mitigate defense in this case constitutes reversible error.

IMX previously has addressed the remainder of E-Loan's arguments below in its Renewed Motion for Summary Judgment (D.E.#385, 386, & 387).

           2.    <u>E-Loan's Position.</u>

IMX does not cite a single authority to support its position.  Indeed, what IMX conveniently overlooks is that it seeks to recover a reasonable royalty based upon E-Loan's transactions from November, 2003 through December, 2008.  The inescapable reality is that had IMX given E-Loan *any* affirmative indication after it dismissed E-Loan from the Delaware Action in 2004 that it intended to sue E-Loan again in the future, E-Loan could have taken any of a variety of steps that might have precluded IMX from seeking even a reasonable royalty based upon E-Loan's transactions from November, 2003 through December, 2008.  Thus, since there is a temporal component to the reasonable royalty analysis, and since the failure to mitigate damages has a direct impact on the period of any alleged infringement, the defense is just as applicable to a claim of reasonable royalties as it would be to any other form of damages.

IMX's suggestion that it *must* be awarded not less than a reasonable royalty if it can establish infringement ignores the facts of this case.  Indeed, IMX's suggestion improperly assumes that IMX provided notice in November, 2003, that IMX did not unreasonably delay the commencement of this action, and that IMX took reasonable steps to mitigate damages.  IMX's suggestion also ignores various statutory and legal requirements.  Certainly, 35 U.S.C. §284 does not exist in a vacuum, and it must be considered together with the rest of the Patent Act.  For example, IMX's compliance with the Patent Act's notice provision is a prerequisite to any damage award. 35 U.S.C. §287 ("In the event of failure so to mark, ***no damages shall be***

*recovered* by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered *only for infringement occurring after such notice*." (emphasis added)). Since IMX did not identify the accused product or device until the filing of the Amended Complaint in this action, and since notice is only given "when the patentee affirmatively communicates to the alleged infringer a *specific charge of infringement* by a *specified accused product* or device," *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1345 (Fed. Cir. 2001), IMX is precluded from recovering *any* damages, including a reasonable royalty, prior to the filing of the Amended Complaint.

In addition to various statutory requirements, any damage award may be reduced or even precluded entirely if E-Loan establishes that any of the asserted defenses are applicable. For example, the effect of a laches defense is to "bar relief in a patent suit only for infringement prior to suit." *A.C.Aukerman v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1039 (Fed. Cir. 1992). When applied to the instant case, a successful laches defense will act as a complete bar to recovery. Since the laches defense can reduce or bar recovery entirely, there is simply no reason why laches, or some other act or failure to act supporting any of E-Loan's defenses, could not bar recovery in whole or in part. Thus, the failure to mitigate damages defense, if established, could and would reduce or preclude IMX from recovering a reasonable royalty, assuming that IMX is able to establish infringement.

G.   Section 112 Defenses.

1.   IMX's Position.

IMX submits that E-Loan's enablement and written description defenses, as IMX currently understands them, are contrary to the Court's Order on Claim Construction (D.E.#270) and should not be considered by the jury.

2.    <u>E-Loan's Position.</u>

E-Loan submits that these issues were not resolved by the Court's Order on Claim Construction, and thus, remain issues to be resolved at trial. Indeed, the issues of failure to comply with the 'best mode' requirement and failure of 'written description' are factual issues to be resolved by the jury, and if this Court resolved those issues through its Order on Claim Construction, then E-Loan contends that the Court has committed reversible error. Finally, it is well-settled law that a Court can modify its claim construction ruling even after the close of evidence.

H.    <u>E-Loan's Section 102 Defenses.</u>

1.    <u>IMX's Position.</u>

IMX objects to the presentation of any section 102 defense to the extent E-Loan failed to identify the specific subpart(s) of 35 U.S.C. §102 during discovery. IMX further objects to E-Loan's attempts to present evidence on whether the invention was used for commercial purposes more than one year prior to the filing date of the application for the '947 Patent because E-Loan failed to disclose this defense during discovery.

2.    <u>E-Loan's Position.</u>

First, this Court has already upheld the legal sufficiency of many of E-Loan's Affirmative Defenses, despite IMX's challenge to same in its Renewed Motion for Partial Judgment on the Pleadings. Moreover, E-Loan disclosed its defenses in discovery, and IMX did not feel the need to file a motion to compel more comprehensive or detailed discovery responses. By failing to do so, IMX waived its right to object to the presentation of evidence on defenses that E-Loan disclosed in discovery.

In addition, much of the evidence relating to the commercial use that renders the '947 Patent invalid comes from the testimony of inventors and one of IMX's former officers. As such, IMX can hardly be surprised when its own witnesses and a former officer are the parties whose testimony will render the '947 Patent invalid.

I.   Invalidity Burden of Proof.

　　　1.   E-Loan's Position.

The question of what standard of proof must be demonstrated at trial to invalidate a patent based upon prior-art evidence that was never presented to or considered by the U.S. Patent and Trademark Office ("USPTO") is presently pending before the U.S. Supreme Court. *Microsoft Corp. v. I4I Ltd. Partnership*, --- S.Ct. ---, 2010 WL 3392402 (U.S. Nov. 29, 2010)(petition for certiorari granted).

While the Federal Circuit presently adheres to the view that a person challenging the validity of a patent must prove invalidity by clear and convincing evidence, even when the invalidity defense is based on prior-art evidence that was never presented to or considered by the USPTO, *see Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1050 (Fed. Cir. 1988), this view is contrary to both Supreme Court precedent and the view of U.S. Circuit Courts prior to the Federal Circuit's assumption of jurisdiction over most patent matters.

In *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), the Supreme Court expressed a pragmatic view of the statutory presumption of validity. There, the Supreme Court "th[ought] it appropriate to note that the rationale underlying the presumption—that the [US]PTO, in its expertise, has approved the claim—seems much diminished" where an invalidity defense rests on evidence that the USPTO never had an opportunity to consider. *Id.* at 426. That observation was in accord with the conclusion reached by *all twelve* regional circuits before the

Federal Circuit assumed jurisdiction of most patent matters in 1982. *See, e.g., Futorian Mfg. Corp. v. Dual Mfg. & Eng'g, Inc.,* 528 F.2d 941, 943 (1st Cir. 1976)(affirming an instruction that the jury could find invalidity by a preponderance of the evidence because "to the extent patent office attention has not been directed to relevant instances of prior art the presumption of validity arising from the issuance of a patent is eroded"). Where the statute—in this case, 35 U.S.C. §282—"does not prescribe the standard of proof," "[t]his silence is inconsistent with the view that Congress intended to require a special, heightened standard of proof." *Grogan v. Garner,* 498 U.S. 279, 286 (1991). Against this background, the Federal Circuit simply has no logical basis for requiring that parties prove invalidity by clear and convincing evidence. As such, the only logical standard of proof for invalidity—at least vis-à-vis prior art that was never presented to or considered by the USPTO—is by a preponderance of the evidence.

The instant action involves the very same issue as is presently pending before the Supreme Court. Some of the prior art that E-Loan contends invalidates the '947 Patent was never presented to or considered by the USPTO during prosecution of the application that matured into the '947 Patent.[27] Since this prior art was never presented to or considered by the USPTO, E-Loan contends that the presumption of validity that the '947 Patent enjoys is "much diminished," and the standard of proof should be a preponderance of the evidence.

        2.    <u>IMX's Position.</u>

---

[27] Indeed, E-Loan's Notice Pursuant to 35 U.S.C. §282 identifies four prior-art patents—U.S. Patent Nos. 5,966,699 (Zandi), 5,940,812 (Tengel), 5,794,207 (Walker), and 5,870,021 (Norris)—which were <u>not</u> disclosed to or considered by the USPTO during prosecution of the application that matured into the '947 Patent. These same references were recently considered by the USPTO in connection with two of IMX's patent applications directly related to the '947 Patent—application numbers 12/504,132 and 12/504,350—and cited in connection with the USPTO's final rejection of those applications. Had those references been disclosed to the USPTO in connection with the application that matured into the '947 Patent, E-Loan contends it is likely that the '947 Patent would never have issued.

IMX submits that E-Loan's request for the Court to consider applying a different burden of proof than clear and convincing evidence with respect to E-Loan's invalidity defense invites error and ignores the undisputed principle that the Federal Circuit respects the principle of stare decisis and follows its own precedent unless the decision is overruled by the court en banc or by other controlling authority such as intervening Supreme Court precedent. *See, e.g., Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) ("[The Federal Circuit] respects the principle of stare decisis and follows its own precedential decisions unless the decisions are 'overruled by the court en banc, or by other controlling authority such as an intervening ... Supreme Court decision.'); *Texas Am. Oil Corp. v. U.S. Dept. of Energy*, 44 F.3d 1557, 1561 (Fed. Cir. 1995) ("This court applies the rule that earlier decisions prevail unless overruled by the court *en banc,* or by other controlling authority such as intervening statutory change or Supreme Court decision."); *South Corp. v. United States,* 690 F.2d 1368, 1370 n. 2 (Fed. Cir. 1982).

The pending *Microsoft Corp. v. I4I Ltd. Partnership,* --- S.Ct. ---, 2010 WL 3392402 (U.S. Nov. 29, 2010)(petition for certiorari granted) appeal on which E-Loan relies will not be decided prior to the commencement of the trial in this action. For this reason alone, the burden of proof for any invalidity challenge to the '947 Patent remains clear and convincing evidence.

J.     IMX's Undisclosed "Actual Notice" Theory.

1.     E-Loan's Position.

E-Loan objects to the inclusion of the issue of "[w]hether E-Loan had 'actual notice' by virtue of answering the complaint and filing counterclaims in the Delaware Action." As a matter of law, the notice inquiry focuses exclusively on the notice and not on any understanding the alleged infringer may have had. *Amsted v. Buckeye Steel Castings, Inc.,* 24 F.3d 178, 187 (Fed.

Cir. 1994)("It is irrelevant, contrary to the district court's conclusion, whether the defendant knew of the patent or knew of his own infringement"). Indeed, it would be reversible error for this Court to consider E-Loan's actions, which necessarily include the filing of an answer and counterclaim in the Delaware Action, for purposes of determining whether IMX provided notice under §287. For purposes of determining whether notice as required by §287 was provided, this Court may only consider IMX's actions, and specifically, whether IMX ever identified the allegedly infringing good or service in a letter or complaint. *Id.*; *Asyst Techs., Inc. v. Empak, Inc.*, 2006 WL 3302476 at *4 (N.D. Cal.); *Telios Pharm., Inc. v. Merck KGAA*, 1997 WL 34672400 at *3 (S.D. Cal.); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 1991).

Thus, the alleged filing of an Answer and Counterclaims in the Delaware Action does not have any bearing on the legal issues of (i) whether IMX's Complaint in the Delaware Action provided the notice required under §287, namely the identification of the accused product or service (it did not); and (ii) assuming *arguendo* the Complaint in the Delaware Action provided the requisite notice, whether IMX's voluntary dismissal of E-Loan from the Delaware Action has the effect of rendering the Complaint in the Delaware Action a nullity.

   2. <u>IMX's Position</u>.

IMX disclosed E-Loan's February 13, 2004 answer and counterclaims in its Initial Disclosures in this action, including the following identification: Documents and materials relating to Defendants' first knowledge or awareness of the '947 Patent and Documents and materials relating to Defendants' conduct after becoming aware of the '947 Patent. IMX disagrees with E-Loan's assertion that the filing of the answer and counterclaims, which deny infringement, has no bearing on the actual notice issue.

DATED: This 7th day of January, 2011

Respectfully submitted,

ASTIGARRAGA DAVIS MULLINS
& GROSSMAN, P.A.
Local Counsel for Plaintiff
701 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 372-8282
Telefax: (305) 372-8202


By:  /s/ Edward Mullins
Edward M. Mullins / FBN 863920
E-Mail: emullins@astidavis.com
Annette C. Escobar / FBN 369380
E-Mail: aescobar@astidavis.com


M. Elizabeth Day
David Alberti
Marc Belloli
Erik R. Fuehrer
DLA PIPER LLP (US)
Lead Counsel for Plaintiff
2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833-2000
Telefax: (650) 833-2001

FELDMAN GALE, P.A.
Counsel for Defendant
One Biscayne Tower, 30th Floor
16th Floor 2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-358-5001
Telefax: 305-358-3309


By:  /s/ Samuel Lewis
James A. Gale / Fla. Bar No. 371726
E-Mail: jgale@FeldmanGale.com
Samuel A. Lewis / Fla. Bar No. 55360
E-Mail: slewis@FeldmanGale.com
Rafael A. Perez-Pineiro / Fla. Bar No.
543101
E-Mail: rperez@FeldmanGale.com