UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IMX, INC. d/b/a GLOBAL NETOPTEX, INC., | CASE NO. 09-20965-CIV-MARTINEZ<br>Magistrate Judge Brown |
| Plaintiff, | |
| vs. | |
| E-LOAN, INC. and BANCO POPULAR NORTH AMERICA, INC., | |
| Defendants.<br>_____/ | |

## MOTION TO STAY PENDING REEXAMINATION OF U.S. PATENT 5,995,947

Defendant, E-Loan, Inc. hereby files this Motion to Stay Litigation Pending Reexamination of U.S. Patent No. 5,995,947 and in support states as follows:

**I.      INTRODUCTION**

On Tuesday, February 15, 2011, the expert examiners in the United States Patent and Trademark Office's ("PTO") Reexamination Division determined that certain prior art references that were not previously considered by the PTO, raise "substantial new questions of patentability" and granted reexamination of the single patent at issue in this action, namely U.S. Patent No. 5,995,947 (the "'947 Patent").[1]  A copy of that Order of Reexamination is attached hereto as Ex. "A."  On reexamination, the PTO will review *de novo* — and without conferring any presumption of validity — whether the alleged "invention" described in the '947 Patent is valid.  *See* Manual of Patent Examination Procedures ("MPEP") § 2258.I.G. Moreover, not only is the '947 Patent now under reexamination, the PTO has also recently issued final rejections in three "child" patent applications ("Child Applications"), each of which derives from the '947

---

[1] The Court may take judicial notice of records from the USPTO. *See* Fed.R.Evid. 201 & 902;

Patent, each of which shares the same '947 Patent specification,[2] and each of which shares similar claims to those in the '947 patent. Copies of those Final Rejections are attached hereto as Exs. "B," "C" and "D."

Given the bases of the Final Rejections in the Child Applications by the PTO, it is now highly likely that the PTO will either declare the claims of the '947 Patent completely invalid, or will require the claims to be substantial narrowed in order to avoid the cited prior art. *See Ex Parte* Reexamination Filing Data dated December 31, 2010 attached as Ex. "E" (Citing statistics showing that in over 75% of Reexaminations, claims are either canceled or changed). Given that the PTO has already issued Final Rejections over nearly identical claims in the Child Applications emanating from the '947 Patent, such a result is even more likely.   Should    the PTO invalidate the '947 Patent in connection with the reexamination, Plaintiff's claims will be moot. Should the claims survive, but in significantly altered format, then the doctrine of "intervening rights" would preclude the infringement action asserted here, since E-Loan ceased relevant operations even before this lawsuit was filed.[3]   Finally, by granting the instant Motion this Court will have the benefit of the PTO's expertise on the issues in this case as it decides the

---

[2] The Specification page for each of the applications provides as follows:

> This application is a divisional of prior application serial no. 11/248,018, filed October 11, 2005, which is a continuation of [[prior]] U.S. patent application serial no. 09/411,683 filed October 4, 1999, now abandoned, which is a continuation of U.S. patent application serial no. 08/928,559, now U.S. patent no. 5,995,947, hereby incorporated by reference as if fully set forth herein

[3] Under the doctrine of intervening rights, the Plaintiff would only be able to seek damages that accrue after newly narrowed claims issued from the re-exam proceedings—assuming in fact new claims even issue. The fact that E-Loan stopped it mortgage lending operations *before* this suit was filed, means that no damages would accrue after reexamination. Thus, even if Plaintiff were to prevail at a trial after reexamination, it would be entitled to no damages. Moreover, since E-Loan no longer operates, not only would there be no available damages, there would be no allegedly infringing activities falling under the amended claims and thus no basis for suit.

pending motions for summary judgment, the findings of fact and conclusions of law, the jury instructions, and otherwise addresses the prior art at issue during the course of litigation. These benefits outweigh any downside to a stay and this Court should therefore grant this Motion.

## II.     RELEVANT BACKGROUND

On December 2, 2010, a Request for *Ex Parte* Reexamination ("Request") of the '947 Patent, the patent at issue in this litigation, was filed with the PTO. *See* Ex. "F." The Request sought re-examination of Claim 1, 2, 7-12, 19-21, and 26-31 of the '947 Patent and identified several pieces of prior art that had not been considered by the PTO in connection with the original application for the '947 Patent during prosecution. Those prior art references include: 1) U.S. Patent 5,966,699 to Zandi ("Zandi"); 2) U.S. Patent 5,699,527 to Davidson ("Davidson"); 3) U.S. Patent 5,797,133 to Jones ("Jones"); and 4) U.S. Patent 5,774,883 to Andersen ("Andersen").  A supplemental Citation of Prior Art ("Supplemental Citation") pursuant to 35 U.S.C. § 301 and 37 C.F.R. § 1.501 was filed on January 28, 2011, and identified four additional pieces of prior art, U.S. Patent 5,940,812 to Tengel ("Tengel"), U.S. Patent 5,794,207 to Walker ("Walker"), an article entitled "Canada's Electronic Mortgage Market," *Mortgage Originator,* July 1996, pp. 16-18 by Ord ("Ord") and U.S. Patent No. 5,870,721 to Norris ("Norris").  *See*, Ex. "G.".  These prior art references had not been cited to or relied upon by the PTO during the original prosecution of the '947 Patent. They now, however, are part of the '947 Patent file wrapper.

On February 14, 2011, the PTO issued an Order Granting the Request for *Ex Parte* Reexamination ("Reexamination Order")  determining that "[a] substantial new question of patentability affecting claims 1, 2, 7-12, 19-21, 26-31 of US Patent 5, 995,947 to Fraser et. al is raised by the request for *ex parte* reexamination." *See* Ex. "A." The Reexamination Order itself

is 16 pages in length and recites detailed disclosure from the Zandi, Davidson, Jones and Andersen references cited in the Request. It appears that the PTO did not need to rely on the subsequent Supplemental Citation, or the prior art set forth therein, in order to determine that a reexamination of the patent was required. The PTO has ruled that the original references cited in the Request raised substantial new questions of patentability when compared to the claims in the '947 Patent. [4]    The Reexamination Order notes that the prior art raises questions both of anticipation and obviousness and that therefore reexamination is appropriate.

    Of even greater significance to this Court is the fact that the PTO has already issued three Final Rejections in connection with three related IMX continuing Child Applications that claim priority from the '947 Patent and that seek to claim virtually indistinguishable "inventions" from those claimed in the '947 Patent. Those Child Applications consist of: 1) U.S. Application 11/248,018 (the "'018 Application"); 2) U.S. Application 12/504,132 (the "'132 Application"); and 3) U.S. Application 12/504,350 (the "'350 Application"). The '132 and '350 Applications are divisional application from the '018 Application. All share the identical specification as the '947 Patent.

---

[4] Moreover, the Reexamination Order appears to raise substantive questions with respect to prosecution of the original examination. Thus it notes:

> The prosecution of US Patent 5,995,947 included claim rejections of several claims (included each independent claim) using US 5,611,052 to Dykstra. Some dependent claims were indicated as allowable, but no explicit reasons for allowable subject matter were given. Patentee argued without amending the independent claims that while Dykstra et al ('052) taught automated loan application generation, it failed to teach that the parties can search and modify a loan database consistent with their role in the loan transaction. The case was subsequently allowed, but again lacked explicit reasons for allowance.

*See* Reexamination Order at p. 5.

On October 26, 2010, approximately a month before the Request was filed, the PTO issued a Final Rejection of the '132 Application rejecting arguments raised by IMX in its August 4, 2010 Response to the PTO's February 4, 2010 Non-Final Rejection. *See*, Ex. "B." On December 22, 2010, the PTO issued Final Rejections of the '132 Application and the '350 Application. *See*, Exs. "C" and "D." As with the Final Rejection of the '018 Application, the Patent Office rejected efforts of IMX to overcome Non Final Rejections in these Applications as well.

These Final Rejections are especially noteworthy because not only do they all depend from the same specification as the '947 Patent, the claims and technology are extremely similar. Thus, for example, Independent Claim 1 of the '947 Patent that is being asserted against E-Loan in this case reads:

> A method for processing loan applications, said method including the steps of maintaining a database of pending loan applications and their statuses at a database server, wherein each party to a loan can search and modify that database consistent with their role in the transaction by requests to said server from a client device identified with their role. ('947 Patent, Col. 14:66-Col. 15:5).

Claim 56 in the '132 application is virtually identical to Claim 1 except that it uses the term "loan profile" instead of the term "loan application," and in that it uses terms "borrowers and lenders" instead of "each party to a loan." That Claim provides:

> A method for processing loan profiles, said method including the steps of maintaining a database of loan profiles and their status at a database server, wherein borrowers and lenders can each search and modify the database consistent with their role in a loan transaction by requests to said server from a client device.

Tellingly, the PTO has rejected this parallel claim, *inter alia,* as being obvious over Tengel, Walker ("Walker") and Ord, all of which were the subject of the Supplemental Citation, and all

5

of which are now a part of the '947 file wrapper. See, Exhibit "G" attached hereto. Similarly, Claim 60 of the rejected '132 application is virtually identical to Claim 19 in the Patent in suit, the only other independent claim in the '947 Patent being asserted against E-Loan. Claim 60 has also now been rejected by the PTO on the same grounds as Claim 56. Thus the PTO has already determined that two claims, virtually indistinguishable from the only independent claims of the '947 Patent, are anticipated and therefore invalid.

IMX's '350 Application has also been rejected, *inter alia,,* over the Zandi, Walker and Norris patents. Moreover, Tengel and Norris have both been cited by the PTO in its Final Rejection against IMX's '018 Application. This prior art cited against IMX's '018, '132 and '350 Applications in the PTO's Final Rejections of those applications, has been made of record in the Reexamination here. *See* Ex. "G." Accordingly it will be addressed in the PTO's Reexamination proceedings of the '947 Patent. If the PTO rules the same way with regard to the '947 Patent as it did in the Final Rejections in the corresponding Child Applications, the '947 Patent may cease to exist, either in whole or in part, and this action will become moot. Therefore, E-Loan respectfully requests this Court to stay the instant action pending the reexamination by the PTO.

III.   ARGUMENT

   A.   Reexamination

Reexamination is provided for by federal statute and allows for individuals to request the PTO to reexamine or re-evaluate the patentability of an unexpired U.S. patent. *See* 35 U.S.C. § 302. A request must be based on documentary prior art such as patents or other printed publications. *See* MPEP § 2217; *Quad Environmental Technologies Corp. v. Union Sanitary,* 946 F.2d 870, 875 n. 7 (Fed Cir. 1991). Under Patent Office procedures, the cited prior art is

reviewed by the PTO and if those prior art references give rise to a "substantial new question of patentability" the Request should be granted. *See* 35 U.S.C. § 304.

Pursuant to 35 U.S.C. § 305, reexamination proceedings are conducted with special dispatch by the USPTO. The USPTO will further expedite the reexamination proceedings where litigation has been stayed. *Emhardt Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q.2d 1889, 1892, n.4 (N.D. Ill. 1987). Statistics from the USPTO demonstrate that there is over a 70% probability that at least some of the patent claims will be cancelled or changed during a reexamination initiated by a third party. *See Ex Parte* Reexamination Filing Data, December 31, 2010, attached hereto as Exhibit "E"; *see also*, *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004) ("Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%.").[5]

Moreover, during reexamination, the PTO may consider admissions made by a patentee during litigation to the extent that they help determine the scope and content of the prior art and more particularly whether the prior art discloses features that are claimed in the patent under reexamination. *See* MPEP 2258.I.F.1 ("An admission by the patent owner of record in the file or in a court record may be utilized in combination with a patent or printed publication."). *See also id. at* 2258.I.F.2 and 2217.III ("Admissions by the patent owner as to any matter affecting patentability may be utilized to determine the scope and content of the prior art in conjunction with patents and printed publications in a prior art rejection, whether such admissions result from patents or printed publications or from some other source.").[6]

---

[5] Indeed, this last statistic is particularly compelling when considered in light of the fact that the PTO has already issued final rejections of claims in the virtually identical Child Applications.

[6] This is important here because in these proceedings, IMX has attempted to argue that the '947 Patent claims activities far beyond what it argued in the previous Delaware Action.

B.     **The Policy of Granting Stays During Reexamination is Liberal**

Courts have consistently held that the reexamination procedure is designed to provide an "inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts." *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1380 (N.D. Cal. 1994). Indeed:

> The [reexamination] process is considered to be an 'efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the PTO's expertise' and 'provide the federal courts with the expertise of the PTO in resolving patent claims'

*Roblor Marketing Group. v. GPS Industries, Inc.* 633 F.Supp.2d 1341, 1346 (S.D. Fla. 2008), [who is the judge here?] *citing Ethicon v. Quigg,* 849 F.2d 1422, 1426-7 (Fed. Cir. 1988). One purpose of the reexamination procedure is to eliminate the trial of an issue, as when a claim is cancelled or to provide the district court with " the expert view of the PTO" when a claim may survive a challenge. *Gould v. Control Laser Corp.* 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Congress specifically intended for courts to liberally exercise their discretion to stay litigation where reexamination has been allowed. *See* H.R. Rep. No. 1307 Pt. I, 96th Cong., 2d Sess. 4, *reprinted in* U.S. Code Cong. & Ad. News 6460, 6463l *see also Gould v. Control Laser Corp.,* 705 F.2d 1340 at 1342; *Lentek Int'l, Inc. v. Sharper Image Corp.,* 169 F.Supp. 2d 1360, 1362 (M.D. Fla. 2001)("As several courts have noted, the sponsors of the patent reexamination legislation clearly favored the liberal grant of stays by the district court when patents are

---

Thus, for example, Robert Wallace, IMX's expert, was asked to assume that E-Loan has infringed the '947 Patent "by the act of taking loan applications submitted via the Internet and processing those loans." *See* "". Such an expansive view of the Patent has opened the Patent to substantial prior art. IMX's argument has thus far been successful, based upon the broad language of this Court's Markman Order. In that Order, IMX requested, and this Court provided, a very broad definition of "loan application." That definition seems to include the term "loan profile" that has been rejected by the PTO in the Child Applications.

submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the district court with the expertise of the patent office.").

A review of the authority reflecting on the legislative history demonstrates that an express stay of litigation within the statute was deemed unnecessary due to the district court's inherent power to stay an action pending reexamination. One U.S. District Court expressly summarized this history as follows:

> Early drafts of the reexamination statute expressly provided for a stay of court proceedings during all reexamination proceedings. *See* S. Rep. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. Rep. 5075 96th Cong., 1st Sess. § 310 (1979); S. Rep. 2446, 96th Cong., 2d Sess. § 310 (1980). However, an express provision was ultimately deemed unnecessary because courts already had the power to stay civil actions "to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983). [footnote omitted] …. To no surprise, courts frequently note that, "[t]he legislative history surrounding the establishment of the reexamination proceeding ***evinces congressional approval of district courts liberally granting stays***." *Robert H. Harris Co. v. Metal Mfg. Co.*, 19 U.S.P.Q.2d 1786, 1788 (E.D.Ark. 1991).

*Broadcast Innovation, LLC v. Charter Commc'ns, Inc.*, 2006 W.L. 1897165, *3 (D. Colo. July 11, 2006) (emphasis added); *see also ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994) ("It is clear from the cases cited by both parties that there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings."); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) ("The legislative history of the statute itself (35 U.S.C. § 301 *et seq.*) provides support for a stay."). For these reasons, courts have consistently noted that patent litigation is "routinely" stayed pending the outcome of reexamination proceedings. *See Software Computer Products v. Hayworth,* 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000); *GPAC, Inc. v. D.W.W. Enterprises, Inc.* 144 F.R.D. 60, 64 (D.N.J. 1992).

    **C.**    **Factors to the Court to Consider**

Courts generally consider three factors in deciding whether to stay litigation: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court. *Tap Pharm. Prods.*, 70 U.S.P.Q.2d at 1320; *GPAC, Inc.*, 144 F.R.D. at 66; *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).[7] The second and third factors are often considered together. *Broadcast Innovation*, 2006 W.L. 1897165 at *4, n. 6 ("Reducing the burden of litigation" is often merged with "simplifying issues" and "streamlining trial."). The ability to grant a stay rests within the sound discretion of the trial court, even where trial is fast approaching. Thus, for example, stays have been granted where trial was merely two months away after eight (8) years of litigation. *Id.*; *Bausch & Lomb, Inc. v. Alcon Lab., Inc.,* 914 F. Supp. 951, 952 (W.D.N.Y. 1996)(Granting stay pending reexamination notwithstanding the "advanced stage" of the litigation with trial approaching); *see also Stryker v. Trauma, S.A. v. Synthes (USA),* 2008 WL 8778448 (D. N.J. 2008)(granting stay **after** jury returned verdict of infringement but before commencing trial on damages); *Gould v. Control Laser Corp.* 705 F.2d at 1341-2 (Fed. Cir. 1983) (Granting stay after five (5) years of litigation and twenty (20) days prior to commencement of trial). Indeed this Court itself has previously granted a stay of an action pending reexamination, notwithstanding that discovery was closed and the case was imminently set for trial. See, *Exigent Technology, Inc. v. Prepaid Network Corp., et al.* , Case No. 03-cv-23400 (February 27, 2007) (Judge Martinez) (Order staying action in light of reexamination based on parties'

---

[7] Other courts have phrased the factors thus: 1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; 2) whether the stay will simplify the issues in question and in the trial of the case; and 3) whether discovery is complete and whether a trial date has been set. *See Roblor Marketing Group. v. GPS Industries, Inc.* 633 F.Supp.2d at 1347; *Middleton, Inc. v. Minnesota Mining & Mfg., Co.,* 2004 WL 1968669 *3 (S.D. Iowa 2004).

recognition that it would reduce the burdens of litigation and guide the court in subsequent rulings.).  A copy of the Order is attached hereto as Ex. "H."[8]

Under the circumstances present here, where the PTO has granted reexamination and has furthermore already issued Final Rejections in related applications, a consideration of the applicable factors weighs heavily in favor of granting a stay.  *See e.g.  Bausch & Lomb, Inc. v. Alcon Lab., Inc.,* 914 F. Supp. at  952 (Granting a stay based where reexamination had been granted and the rejection by the PTO of a continuation application that reflected claims "similar to if not identical to some of the patent technology at issue in this case").

### 1. IMX Will Suffer No Prejudice as the Result of Any Stay

Turning to the first factor, the Court should consider the fact that neither IMX nor E-Loan continue to operate in the mortgage origination loan business.  This is highly significant because this mitigates any prejudice the parties might suffer as a result of the granting of a stay.  The fact is that IMX has no market to protect.  Thus, in *Roblor*, for example, the Court noted:

> There is no dispute that Plaintiff does not produce a product, has no substantial operations, and appears to exist only as a holding company whose only asset is the '485 Patent.  It is thus not suffering irreparable harm if a judgment in its favor is not entered in the short term.  Plaintiff's remedy in this case is based entirely on money damages… Thus a stay of limited duration would not significantly prejudice Plaintiff's available remedies.

*Roblor Marketing Group. v. GPS Industries, Inc.* 633 F.Supp.2d at 1347.

Given that neither of the parties remain active in the marketplace and IMX is seeking only a royalty as money damages for activities that long ago ceased — E-Loan shuttered it mortgage loan origination business months before this lawsuit commenced — there is no real tangible prejudice that IMX would suffer if this Court were to grant the stay.  *See e.g. Microlinc.*

---

[8] E-Loan recognizes that the parties in that case agreed to the requested stay.  However, the lack of agreement in this case does not undercut the rationale and good sense involved in granting such a stay

*LLC v. Intel Corp.,* 2010 WL 3766655 *2 (E.D. Tex. 2010)(No real prejudice where, because patentee manufactured no product, there was no "risk of customer losses or of injury to market share during a stay.").

The only thing IMX might point to is the prospect of a limited delay as the reexamination proceeds. But, the mere fact of delay does not equate to prejudice for purpose of this analysis; indeed any stay will lead to a delay and would thus equate to prejudice in every case. *Roblor Marketing Group. v. GPS Industries, Inc.* 633 F.Supp.2d at 1347. Rather, far from causing harm, any resulting delay would "[serve] the interests of correctness and finality, by assuring that any decision by the PTO, can be taken into account, by the [court] in further proceedings…" although it "necessarily results in deferral of the final outcome of this case." *Stryker v. Trauma, S.A. v. Synthes (USA),* 2008 WL 8778448, at *2.

Finally, any complaint by IMX about delay would ring particularly hollow under the facts of the instant case seeing as though IMX delayed as long as it did before bringing this lawsuit. As this Court is well aware, IMX first sued E-Loan in 2003, dismissed it without condition in mid-2004 and delayed filing this action for five years, until 2009. Indeed, given that IMX has known about E-Loan since at least 2000, and most likely before then, IMX can hardly be heard to complain now about any prejudice from any delay that might arise in connection with reexamination. Given the recent rejections from the PTO and the prospect that the PTO will most likely apply the same art here to invalidate some or all of the claims at issue, any inconvenience associated with the delay would be minor, particularly when measured against the delay that IMX has occasioned itself.

### 2. A Stay Will Simplify the Issues and Reduce the Burden of Litigation

It is self-evident that granting this stay will simplify the issues in this litigation, as the

prior art that has been raised by E-Loan is now of record before the PTO and will be considered by the PTO in connection with its reexamination. Here, allowing the reexamination process to run its course promises to significantly simplify the issues in this litigation, if not moot it entirely. In *Grayling Industries, Inc.*, the Northern District of Georgia explained the benefits dynamic as follows:

> The added expense arising from a stay of this proceeding is greatly outweighed by the increase in efficiency which any PTO determination would bring. On the one hand, if the patents are declared unpatentable, this action would be moot. On the other hand, even though Plaintiffs have not agreed to be bound by a PTO finding of a valid patent, such a finding would be admissible and carries a presumption of validity. Moreover, the arguments which Plaintiffs would make at trial will have been explicitly reviewed and rejected by the PTO, adding to the persuasiveness of the PTO determination.

*Grayling Indus., Inc.*, 19 U.S.P.Q.2d at 1874; *see also Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y. 2000) ("If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims."); *Broadcast Innovation, LLC v. Charter Commc'ns, Inc.*, 2006 W.L. 1897165, *7(Noting that because in reexamination, the PTO considers prior art not previously considered by the "Court would benefit immensely from the PTO analysis of it"); *Bausch & Lomb, Inc. v. Alcon Labs, Inc.,* 917 F. Supp. at 953 ("Because, [sic] the PTO is considered to have expertise in deciding issues of patentability[,] many court have preferred to postpone making final decisions on infringement until the PTO rules on issues before it.") Indeed, where a case relies in large part upon the validity of a patent's claims, a stay is appropriate given the "substantial impact" the PTO's determination may have on the proceedings. *See Weatherford International, Inc. v. Casetech International, Inc.,* No. Civ. A. 03-5383, 2006 WL 581270, at *1 (S.D.Tex. 2006).

Thus, a stay is justified when "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement case." *Synthes (USA) v. G.M. dos Reis Ind. Com. de Equip Medicos,* 2010 WL 669773 at *2 (S.D. Cal. February 22, 2010) [citation omitted]. [9] Moreover, even if the patent were to survive reexamination, should the claims asserted here be amended in any material degree, the doctrine of intervening rights would preclude recovery for any infringing activity that occurred prior to the issuance the reexamination certificate. *Bloom Engineering Co., Inc. v. North American Mfg. Co., Inc.,* 129 F.3d 1247, 1250 (Fed. Cir. 1997)("Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent cannot be enforced against infringing activity that occurred before issuance of the reexamination certificate.").

Here, these benefits would appear to be particularly significant for two reasons: First, the PTO has already considered some of the prior art which E-Loan's expert has opined upon and has determined that these references raise substantial new questions of patentability. Thus, the Reexamination Order has determined that the Zandi, Davidson, Jones and Andersen references are all potentially anticipatory prior art as well as prior art rendering the '947 Patent obvious. And the prior art which the PTO cited against the Child Applications, the Tengel, Walker, Ord and Norris references, are all of record in this reexamination and are now part of the file wrapper for the '947 Patent. Given the preliminary determination of the PTO's Reexamination Division experts in finding *substantial new questions of patentability* as well as the Final Rejections, it is quite likely that some or all of the claims will be rejected.

---

[9] This is so even where only some claims of the patent may ultimately be affected. *Gould v. Control Laser Corp.* 705 F.2d at 1342 (recognizing benefit of stay pending reexamination both where claims are canceled and where claims survive).

Second, in light of the Final Rejections of the Child Applications, it extremely likely that substantial amendments, at the very least, will be made in reexamination, if any claims whatsoever are allowed to stand. Given the doctrine of intervening rights, it thus seems likely that the outcome of Reexamination will preclude the need of trial since either the claims will be invalidated or, if amended, irrelevant since E-Loan is no longer in operation.

While E-Loan recognizes that trial is approaching and significant litigation has already transpired, that factor alone is not dispositive and must be weighed against the benefit of a stay. Indeed the *Middleton* decision is highly instructive in this regard. There, the Court noted that:

> In the present case, the litigation has been ongoing for over eight years. The trial date is set and is scheduled for the week of October 12, 2004. In addition, several motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay…. However, these facts should be weighed against the benefits of issuing a stay. As argued by 3M, the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to "be conducted with special dispatch."
>
> In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims.[10]

---

[10] In *Middleton*, it should be noted that the Court applied as its 3rd factor for consideration whether the matter had been set for trial and discovery completed rather that the explicit question of whether the stay would conserve resources. As the discussion reveals, however, the consideration are often the same and regardless of which factor the Court looks at, the result here is the same — the benefits to the stay overwhelmingly outweigh any negatives.

15

*Middleton, Inc. v. Minnesota Mining & Mfg., Co.,* 2004 WL 1968669 at *5-6. The Court further sagely noted that:

> The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination.

Similarly, given the likelihood that the '947 Patent will either be invalidated or dramatically changed in light of the Reexamination Order and the Final Rejections, any trial that this Court might conduct would necessarily be tentative and uncertain until the reexamination was concluded. Thus, both the Court's as well as the litigant's resources threaten to be largely wasted should this Court refuse the stay.

Moreover, this Court should also realize that even if trial were allowed to go forward at this point, Reexamination would continue because the PTO cannot stop its reexamination proceedings. *Broadcast Innovation, LLC v. Charter Commc'ns, Inc.*, 2006 W.L. 1897165, *7 ("the PTO cannot stay the reexamination once a request has been granted." [citation omitted]) Moreover, because the burden of validity is less stringent in the PTO, the PTO could cancel claims that the Court determined were valid. *See Ethicon v. Quigg,* 849 F.2d 1422, 1428-29 (Fed. Cir. 1988)("The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions.")

Moreover, if this case were to proceed to trial and the jury were to find the patent valid and infringed, given the Reexamination, the Court would be in the position of having to conduct a separate damages trial **after** a final determination by the PTO. *See Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 996 F.3d 1236 (Fed.Cir. May 21, 1993)(unpublished)("*Standard Haven III*"). In *Standard Haven,* during pendency of a reexamination, a jury found the patent

valid and infringed. On appeal the Federal Circuit upheld the decision but remanded on damages. *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 953 F.2d 1360, 1376 (Fed. Cir. 1991)("*Standard Haven I*"). Before hearing the appeal, the PTO rejected all claims. *Id.* at 1366, n. 2. On remand, the defendant requested a stay pending the final outcome of reexamination but the trial court refused. *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 810 F.Supp. 1072, 1077 (W.D. Mo. 1993) ("*Standard Haven II*"), rev'd *Standard Haven III*. The Federal Circuit, in *Standard Haven III,* reversed the lower court's refusal to grant the stay and held that it was error. The Federal Circuit determined that "if a final decision of unpatentability means that the patent was void *ab initio,* then damages would be precluded." Given the Final Rejections issued in the Continuation Applications, such a prospect is highly likely here. While E-Loan believes that the evidence of invalidity is persuasive, should the jury conclude otherwise, any determination of damages would need to be stayed pending a final determination by the PTO to prevent any similar problems here.

**IV.  CONCLUSION**

For the foregoing reasons, Defendant E-Loan respectfully requests that this Court grant a stay of these proceedings as such a course of action represents will prejudice no party, allows for the most efficient use of this Court's resources, and will simplify the issues for trial.

        Respectfully submitted,

        FELDMAN GALE, P.A.
        Counsel for E-Loan
        One Biscayne Tower, 30th Floor
        2 South Biscayne Boulevard
        Miami, Florida 33131
        Telephone:  305-358-5001
        Telefax:  305-358-3309


        By: /s/Christopher P. Demetriades_____
            James A. Gale / Fla. Bar No. 371726
            E-Mail:  JGale@FeldmanGale.com
            Samuel A. Lewis / Fla. Bar No. 55360
            E-Mail:  SLewis@FeldmanGale.com
            Christopher P. Demetriades/ Fla. Bar No.
            Email: CDemetriades@FeldmanGale.com

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised in the motion and states that the following issues have been resolved:  None.  The following issues remain unresolved:  All issues raised in the motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 18, 2011, the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

        /s/ Christopher P. Demetriades
        Christopher P. Demetriades

**SERVICE LIST**
*IMX, Inc. d/b/a Global Netoptex, Inc. v. E-Loan, Inc., et al.*
Case No. 09-20965-CIV-MARTINEZ

Edward M. Mullins
Annette C. Escobar
Astigarraga Davis Mullins & Grossman
701 Brickell Avenue, 16th Floor
Miami, Florida 33131-2845
Via U.S. Mail and E-Mail

M. Elizabeth Day
John Allcock
Stanley J. Panikowski
Erik R. Fuehrer
Marc Belloli
DLA Piper LLP (US)
2000 University Ave.
East Palo Alto, California 94303
Via U.S. Mail and E-Mail

Michael R. Casey
Davidson Berquist Jackson & Gowdey, LLP
4300 Wilson Boulevard, Seventh Floor
Arlington, Virginia 22203
Via U.S. Mail and E-Mail

William G. Goldman
P.O. Box 2548
Menlo Park, CA  94026
Via U.S. Mail and E-Mail